819 F.2d 1488
 60 A.F.T.R.2d 87-5130, 87-1 USTC P 9346,
23 Fed. R. Evid. Serv. 521
 UNITED STATES of America, and Tim R. Almquist, Agent of
Internal Revenue Service, Appellees,
v.
Paul D. RUE, D.D.S., Appellant.
UNITED STATES of America, and Tim R. Almquist, Revenue Agent
of the Internal Revenue Service, Appellees,
v.
Paul D. RUE, D.D.S., Appellant.
 Nos. 86-5222, 86-5353.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 11, 1986.
Decided June 1, 1987.
 
 Mark Arth, St. Paul, Minn., for appellant.
 Steven W. Parks, Washington, D.C., for appellees.
 Before McMILLIAN, FAGG, and BOWMAN, Circuit Judges.
 BOWMAN, Circuit Judge.
 
 
 1
 In 86-5222, Dr. Paul D. Rue, a sole practitioner of dentistry, appeals from the District Court's[1] order and judgment enforcing an Internal Revenue Service (IRS) summons to produce certain records and documents pertaining to Dr. Rue's dentistry practice for purposes of an IRS civil tax audit. In 86-5353, Dr. Rue appeals from the District Court's subsequent order and judgment citing him for civil contempt for failure to comply with the court's enforcement order. Throughout the District Court proceedings (as well as on appeal), Dr. Rue has resisted the IRS summons by asserting a Fifth Amendment privilege against self-incrimination. Dr. Rue argues that the act of producing the documents would involve testimonial self-incrimination by conceding the existence of the documents, his possession or control of them, and their authenticity, and that under the reasoning of United States v. Doe, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), the District Court could not compel him to produce the documents. Dr. Rue also challenges the District Court's contempt order and the assessment of a fine, costs, and attorney's fees against him. We affirm.
 
 I.
 
 2
 Dr. Rue is a sole practitioner of dentistry in Northfield, Minnesota. On February 26, 1985, the IRS began a civil investigation into the federal tax liability of Dr. Rue and his wife for the 1982 and 1983 tax years. On April 4, 1985, Revenue Agent Tim R. Almquist requested permission to examine all individual patient cards and records maintained by Dr. Rue. Dr. Rue refused to permit Almquist to examine those records, citing the patient-physician privilege. On May 1, 1985, David Lieser, Dr. Rue's accountant, permitted Almquist (and another IRS employee, Charles McDonnell) to examine in Dr. Rue's office a blank patient card. Almquist also was permitted to examine monthly and year-end statements of patient accounts received from Professional Systems of Iowa (PSI) for the 1982 and 1983 tax years, forms sent to PSI by Dr. Rue that contained individual patient treatment information and were used to prepare statements of patient charges and financial statements for the 1982 and 1983 tax years, and appointment books maintained by Dr. Rue for the 1982 and 1983 tax years.
 
 
 3
 On July 8, 1985, Almquist, pursuant to 26 U.S.C. Sec. 7602, served on Dr. Rue an IRS summons requesting him to appear at a local IRS office on July 22 and to produce for examination four categories of documents--the three categories of documents noted above that previously had been examined by Almquist as well as all individual patient records and cards maintained by Dr. Rue that show all services performed and charges incurred for the 1982 and 1983 tax years. Dr. Rue advised Almquist that same day that he would not be able to bring the patient cards and records to the IRS office because of their large number. On July 16, 1985, Dr. Rue, through his attorney, again refused to produce any of the summoned documents or records, asserting that he was under the impression that proposed adjustments for the 1982 tax year had previously been accepted and that the IRS audit for 1982 had been closed.
 
 
 4
 On September 4, 1985, the IRS filed a petition to enforce the summons pursuant to 26 U.S.C. Secs. 7402(b) and 7604(a). Dr. Rue moved to quash the IRS summons, asserting that compliance with the summons might incriminate him under the reasoning of United States v. Doe, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984) ("act of production" doctrine). The case was assigned to a magistrate for report and recommendation. The magistrate concluded that because Dr. Rue had acknowledged, at least implicitly, the existence and his possession of the individual patient cards and records, and voluntarily had permitted agent Almquist to examine the three other categories of documents and records, he had waived his Fifth Amendment privilege against self-incrimination.
 
 
 5
 The District Court, in a memorandum and order dated March 21, 1986, affirmed the magistrate's recommendation to enforce the IRS summons. The District Court, using reasoning different from that used by the magistrate, applied the "act of production" analysis set forth in Fisher v. United States, 425 U.S. 391, 410-413, 96 S.Ct. 1569, 1580-1582, 48 L.Ed.2d 39 (1976), and United States v. Doe, 465 U.S. at 612-614, 104 S.Ct. at 1242-1243, and held that the act of producing the documents would not involve testimonial self-incrimination since the existence of the documents, their possession by Dr. Rue, and their authenticity were already established and within the knowledge of the IRS. The District Court entered an order enforcing the IRS summons and ordering Dr. Rue to comply therewith. Judgment was entered on May 21, 1986. Dr. Rue timely filed notice of appeal.
 
 
 6
 Dr. Rue unsuccessfully sought from the District Court and this Court a stay of the enforcement order pending appeal. After Dr. Rue failed to comply with the District Court's enforcement order, the District Court issued an order to show cause why Dr. Rue should not be held in contempt. At the hearing Dr. Rue stipulated that he was not in compliance with the court's enforcement order, but offered no evidence that he was then presently unable to comply with it. The District Court therefore cited Dr. Rue for civil contempt. The court also imposed a daily fine of $100, conditioned on Dr. Rue's continued noncompliance with the court's enforcement order, and ordered that Dr. Rue reimburse the government $519.07 for expenses and attorney's fees incurred in the contempt proceeding. Dr. Rue timely filed notice of appeal from the contempt order. Thereafter, on October 6, this Court granted Dr. Rue's motion for stay of the District Court's judgment of contempt pending appeal and ordered the two appeals consolidated for submission to the Court.
 
 II.
 
 7
 In 86-5222 Dr. Rue contends that enforcement of the IRS summons (and compelling his compliance therewith) would violate his Fifth Amendment privilege against self-incrimination, in that the act of producing the summoned documents would acknowledge the existence of the documents, his possession of them, and their authenticity.[2] Because Dr. Rue does not challenge the District Court's finding that the Government established a prima facie case for enforcement of the IRS summons, see United States v. Powell, 379 U.S. 48, 57-58, 85 S.Ct. 248, 254-255, 13 L.Ed.2d 112 (1964); United States v. Lask, 703 F.2d 293, 297 (8th Cir.), cert. denied, 464 U.S. 829, 104 S.Ct. 104, 78 L.Ed.2d 107 (1983), the only issue before us is the applicability of the "act of production" doctrine to the facts and circumstances of this case.[3]
 
 A.
 
 8
 In United States v. Doe, the Supreme Court addressed the issue whether, and to what extent, the Fifth Amendment privilege against compelled self-incrimination applies to the business records of a sole proprietorship. 465 U.S. at 606, 104 S.Ct. at 1239. In Doe, a grand jury served five subpoenas on the owner of several sole proprietorships demanding the production of various business records of each of his companies. The owner challenged the subpoenas by asserting a Fifth Amendment privilege against self-incrimination.
 
 
 9
 In holding that the contents of a sole proprietor's business and tax records are not privileged, id. at 612, 104 S.Ct. at 1242, the Court, relying on its decision in Fisher, noted that "the Fifth Amendment protects the person asserting the privilege only from compelled self-incrimination" and that "[w]here the preparation of business records is voluntary, no compulsion is present." Id. at 610, 104 S.Ct. at 1241. The sole proprietor in Doe did not contend that he prepared the documents involuntarily or that the subpoenas would force him to restate, repeat, or affirm the truth of their contents. Thus, the contents of those records were not privileged. Likewise, Dr. Rue does not contend that he prepared the documents in question involuntarily or that the summons would force him to restate, repeat, or affirm the truth of their contents. Therefore, to the extent that Dr. Rue asserts a Fifth Amendment privilege in the contents of the documents and records demanded in the IRS summons, we reject his claim.
 
 B.
 
 10
 In both Doe and Fisher, the Supreme Court observed that even though the contents of a particular document are not privileged, the act of producing the document may be. Doe, 465 U.S. at 612, 104 S.Ct. at 1242; Fisher, 425 U.S. at 410, 96 S.Ct. at 1580. In terms of this case, the question is whether enforcement of the IRS summons would compel Dr. Rue to perform an act having testimonial aspects and an incriminating effect. Doe, 465 U.S. at 612, 104 S.Ct. at 1242. The Court explained that
 
 
 11
 [c]ompliance with the [IRS summons] tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena. The elements of compulsion are clearly present, but the more difficult issues are whether the tacit averments of the taxpayer are both "testimonial" and "incriminating" for purposes of applying the Fifth Amendment. These questions perhaps do not lend themselves to categorical answers; their resolution may instead depend on the facts and circumstances of particular cases....
 
 
 12
 Fisher, 425 U.S. at 410, 96 S.Ct. at 1581 (citation omitted).
 
 
 13
 The Fisher Court went on to suggest that if the existence, possession, and authenticity of the documents are a "foregone conclusion" and the taxpayer "adds little or nothing to the sum total of the Government's information" by his act of producing the documents, the taxpayer's Fifth Amendment privilege is not violated "because nothing he has said or done is deemed to be sufficiently testimonial for purposes of the privilege." Id. at 411, 96 S.Ct. at 1581. In such a case the tacit averments of the taxpayer in producing the documents would not rise to the level of testimony within the protection of the Fifth Amendment, since any information implicitly conceded in producing the documents is already within the Government's knowledge. "Under these circumstances by enforcement of the summons 'no constitutional rights are touched. The question is not of testimony but of surrender.' " Id. (quoting In re Harris, 221 U.S. 274, 279, 31 S.Ct. 557, 558, 55 L.Ed. 73 (1911)).
 
 
 14
 Thus, the issue here focuses on the information possessed by the IRS regarding the existence, possession, and authenticity of the summoned documents. In that regard, we note that a district court's finding on these elements rests essentially on its determination of factual issues. Therefore, we will not reverse that finding unless it has no support in the record. Doe, 465 U.S. at 613-614, 104 S.Ct. at 1242-1243.
 
 
 15
 As noted above, the IRS summons demanded four categories of documents relevant to the 1982 and 1983 tax years: (1) all individual patient records and cards showing services performed and charges incurred; (2) all monthly and year-end statements of patient accounts received from PSI; (3) all forms sent by Dr. Rue to PSI for its use in preparing the monthly and year-end statements of patient accounts; and (4) all appointment books. On May 1, 1985, Dr. Rue voluntarily permitted agent Almquist to examine the documents listed in categories (2), (3), and (4). The District Court, in its March 21, 1986 opinion, therefore justifiably concluded that the IRS already had knowledge of the existence and location (Dr. Rue's possession) of the documents listed in categories (2), (3), and (4), and that Dr. Rue had authenticated these documents by voluntarily producing them on May 1.
 
 
 16
 Dr. Rue argues on appeal that although the IRS may have had knowledge of the existence and location of the records on May 1, 1985, there was no specific finding by the District Court that at the time of the enforcement order on March 21, 1986 the documents then existed or that Dr. Rue then possessed them. We first note our disagreement with Dr. Rue as to the relevant point in time at which possession and existence must be shown. Though it is not entirely clear in his brief, Dr. Rue appears to argue that the IRS must prove, and the District Court must find, existence and possession of the summoned documents as of the date of the enforcement order. That, however, is not the relevant date on which existence and possession must be shown. The relevant date on which existence and possession of the documents must be shown is the date on which the IRS summons is served, for it is at that time that the rights and obligations of the parties become fixed. See Couch v. United States, 409 U.S. 322, 329 n. 9, 93 S.Ct. 611, 616 n. 9, 34 L.Ed.2d 548 (1973); see also United States v. Asay, 614 F.2d 655, 660 (9th Cir.1980) ("An IRS summons imposes a duty to retain possession of summoned documents pending a judicial determination of the enforceability of the summons."). Thus, in this case it was incumbent upon the IRS to show the existence of the summoned documents and Dr. Rue's possession thereof as of July 8, 1985.
 
 
 17
 Though the District Court expressly found that the documents in categories (2), (3), and (4) existed and that Dr. Rue possessed them on May 1, 1985, it made no express finding regarding existence and possession as of July 8, 1985. That oversight is not fatal, however, in this case. While not appropriate in all cases, in some circumstances it may be permissible to invoke an "inference of continued possession" in order to reach a conclusion of present possession from proof of previous possession. Maggio v. Zeitz, 333 U.S. 56, 65-66, 68 S.Ct. 401, 406-407, 92 L.Ed. 476 (1948); United States v. Rylander, 460 U.S. 752, 760-761 & n. 3, 103 S.Ct. 1548, 1554-1555 & n. 3, 75 L.Ed.2d 521 (1983). We caution, however, that "[enforcement] orders should not be issued ... merely on proof that at some past time [the summoned documents were] in [the] possession or control of the [taxpayer], unless the time element and other factors make that a fair and reasonable inference." Maggio, 333 U.S. at 65, 68 S.Ct. at 406. Here, for example, the IRS produced uncontradicted evidence that the documents existed and that Dr. Rue possessed them on May 1. In the circumstances of this case, it is reasonable to infer that those documents still existed and that Dr. Rue still possessed them on July 8. That inference is reasonable in part because of the nature of the documents, the nature of the business to which the documents pertained, the absence of any indication that the documents were transferred to someone else or were destroyed, and the relatively short time period (nine weeks) between the date as of which possession was shown and the date of the ensuing IRS summons. Having made a prima facie showing of the existence and possession of the documents as of May 1, the IRS was entitled to rely upon an inference of continuing possession to establish existence and possession as of July 8. Thus, the District Court's finding that the existence, possession, and authenticity of the documents in categories (2), (3), and (4) are a "foregone conclusion" is not clearly erroneous.[4]
 
 
 18
 The remaining category of summoned documents--the individual patient cards and records--requires a slightly different analysis. The IRS was not permitted to examine any individual patient cards or records. The District Court found, however, that on several occasions Dr. Rue indirectly admitted the existence and possession of those records. For example, on April 4, 1985, Dr. Rue refused to permit agent Almquist to examine the records, asserting a patient-physician privilege. On May 1, 1985, Dr. Rue's accountant permitted Almquist to examine a blank patient card as an example of the type of card and information maintained by Dr. Rue on individual patients. Finally, on July 8, 1985, in response to the IRS summons, Dr. Rue advised Almquist that he would not be able to bring his patient cards to the IRS office since they were too voluminous. Until the enforcement proceeding, Dr. Rue had never denied the existence of or his possession of the patient cards requested in the IRS summons. To the contrary, at all times he implicitly has acknowledged the existence of and his possession of those patient cards. We therefore affirm the District Court's finding that the patient cards and records existed and that Dr. Rue possessed them on July 8, 1985.
 
 
 19
 The more controversial issue regarding the patient cards is whether their authenticity is a "foregone conclusion." As noted above, the IRS never has seen the patient cards. The issue therefore is whether the IRS can independently authenticate the patient cards without using Dr. Rue's act of producing the cards as evidence of their authenticity. The District Court held that the patient cards are "self-authenticating," but cited no authority for its conclusion.
 
 
 20
 On appeal the IRS does not contend that the patient cards are self-authenticating, as that term is defined in Fed.R.Evid. 902. Instead, the IRS contends that authenticity could readily be established under Rule 901(b)(4) by comparing the contents of the patient cards with information from other documents whose authenticity is already established, such as the documents in categories (2), (3), and (4), or from information provided by the patients themselves. The IRS also points out that agent Almquist was permitted to examine a blank patient card and thus would be able to provide some foundation for purposes of authentication.
 
 
 21
 We agree with the IRS that the authenticity of the patient cards can be established independently, without reference to Dr. Rue's act of producing them. See Fed.R.Evid. 901(b)(4); cf. United States v. Wilson, 532 F.2d 641, 644-645 (8th Cir.), cert. denied, 429 U.S. 846, 97 S.Ct. 128, 50 L.Ed.2d 117 (1976).[5] Given our holding as to the documents in categories (2), (3), and (4), we believe that proof of the authenticity of the patient cards is a "foregone conclusion" and is not seriously in issue. We therefore affirm the District Court's order enforcing the IRS summons.
 
 III.
 
 22
 In 86-5353, Dr. Rue challenges the District Court's imposition of sanctions against him for civil contempt. At the show cause hearing, Dr. Rue stipulated that he was not in compliance with the District Court's earlier enforcement order, but he offered no evidence that he was then presently unable to comply. The District Court cited Dr. Rue for civil contempt, imposed a conditional daily fine of $100, and ordered that he reimburse the IRS $519.07 for the expenses and attorney's fees it incurred in the contempt proceeding.
 
 
 23
 We note at the outset that once it is established that a defendant has failed to comply with the court's enforcement order, a fact to which Dr. Rue stipulated, the burden shifts to the defendant. In a civil contempt proceeding, the defendant may assert a present inability to comply with the earlier enforcement order. In raising this defense, however, the defendant bears the burden of production. United States v. Rylander, 460 U.S. 752, 757, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521 (1983). The defendant does not meet this burden simply by alleging nonpossession of the summoned documents and thereafter standing mute and asserting a Fifth Amendment privilege. Id. at 758-761, 103 S.Ct. at 1553-1554. Because that essentially is the course Dr. Rue followed in this case, the District Court acted properly in citing him for civil contempt.[6]
 
 
 24
 Dr. Rue argues that the District Court abused its discretion in ordering him to reimburse the IRS $519.07 for expenses and attorney's fees. Having reviewed the record, we find no abuse of discretion in the awarding of damages to the IRS to compensate for the reasonable expenses and attorney's fees it incurred in the prosecution of the contempt proceeding. See United States v. United Mine Workers, 330 U.S. 258, 303-304, 67 S.Ct. 677, 701-702, 91 L.Ed. 884 (1947); Sizzler Family Steak Houses v. Western Sizzlin Steak House, 793 F.2d 1529, 1534-1535 (11th Cir.1986). Nor do we find any abuse of discretion in the court's imposition of a daily fine of $100, conditioned on Dr. Rue's continued noncompliance with the enforcement order. See United Mine Workers, 330 U.S. at 303-304, 67 S.Ct. at 701-702.
 
 
 25
 The judgment of the District Court is affirmed, and the stay previously granted by this Court pending disposition of the appeal is vacated. Our mandate shall issue forthwith.
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota
 
 
 [2]
 The Government argues that Dr. Rue, in asserting his claim of Fifth Amendment privilege, failed to meet his threshold burden of establishing that production of the summoned documents would present a substantial hazard of self-incrimination or that any incriminating testimonial communication inherent in the act of producing the documents would be used against him in a future criminal prosecution, since the summons was issued in the course of a civil tax audit. We need not decide that issue in view of our holding in Part II.B., infra. Thus, in future summons enforcement actions, the IRS remains free to argue that the Fifth Amendment would not apply because there is no reasonable fear of criminal prosecution arising out of the civil tax audit. See, e.g., United States v. Reis, 765 F.2d 1094, 1096 (11th Cir.1985); Donaldson v. United States, 400 U.S. 517, 535-536, 91 S.Ct. 534, 544-545, 27 L.Ed.2d 580 (1971)
 
 
 [3]
 In 86-5222 Dr. Rue also claims that the District Court erred in holding in its March 21, 1986 order that the individual patient cards and records were "required records" under Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948), and thus were accorded no Fifth Amendment protection. We, however, do not read the District Court's opinion as relying on the "required records" doctrine. Though the District Court did refer to "the 'required records' doctrine of Shapiro," Appendix at 48, that reference was made in the context of a discussion whether the patient cards warranted Fifth Amendment protection under the so-called "private papers" doctrine of Boyd v. United States, 116 U.S. 616, 6 S.Ct. 527, 29 L.Ed. 746 (1886). App. at 47-48. The court's reference to the "required records" doctrine thus appears to have been an inadvertent and isolated use of that phrase. We construe that part of the District Court's opinion to mean that because the patient cards were prepared for business purposes in the course of Dr. Rue's dentistry practice, they were not purely "private" papers, such as a diary, and therefore would not be accorded Fifth Amendment protection under Boyd. Whatever the current validity and parameters of Boyd's "private papers" doctrine, it is clear that any individual patient cards and records maintained by Dr. Rue in his dentistry practice are "business records" and therefore would not receive Fifth Amendment protection under Boyd in any event. See United States v. Doe, 465 U.S. at 607 n. 3, 610-611 nn. 7 & 8, 104 S.Ct. at 1239 n. 3, 1240-1241 nn. 7 & 8
 
 
 [4]
 We wish to emphasize that the burdens of production and proof on the questions of the existence, possession, and authenticity of the summoned documents are on the Government, not the taxpayer. That the burdens rest initially with the Government is conceded by the IRS in this case and is necessarily implied, if not expressly stated, in Doe. See 465 U.S. at 614 n. 13, 104 S.Ct. at 1243 n. 13 ("This is not to say that the Government was foreclosed from rebutting [the taxpayer's Fifth Amendment] claim by producing evidence that possession, existence, and authentication were a 'foregone conclusion.' In this case, however, the Government failed to make such a showing.") (emphasis added) (citation omitted); see also id. at 613 nn. 11 & 12, 104 S.Ct. at 1242 nn. 11 & 12
 
 
 [5]
 Fed.R.Evid. 901 provides in pertinent part as follows:
 (a) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
 (b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
 * * *
 (4) Distinctive characteristics and the like. Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.
 
 
 [6]
 Dr. Rue's reliance on United States v. Edgerton, 734 F.2d 913 (2d Cir.1984) is misplaced for the same reasons stated by the Court in Rylander in response to a claim that the defendant was wrongfully being held in contempt for his failure to answer questions to which he asserted a Fifth Amendment privilege. See Curcio v. United States, 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957). Dr. Rue was not held in contempt for his failure to answer questions, but rather for his failure to produce the summoned documents in compliance with the court's enforcement order. See Rylander, 460 U.S. at 758-61, 103 S.Ct. at 1553-54