**In re GRAND JURY PROCEEDINGS, SUBPOENAS FOR DOCUMENTS, Appellant.**

No. 94–2594.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1994.

Decided Nov. 29, 1994.

Randall W. Ishmael, Jonesboro, AR, argued, for appellant.

John E. Bush, Asst. U.S. Atty., Little Rock, AR, argued, for appellee.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Doye L. Bayird and Judy L. Bayird appeal from an order entered in the district court denying a motion to quash grand jury subpoenas duces tecum served on the Bayirds' attorney and accountant, requiring production of certain business and financial records. For reversal, the Bayirds argue, *inter alia*, that the motion to quash should have been granted because the act of producing the documents would violate their fifth amendment privilege against compelled testimonial self-incrimination. For the reasons discussed below, we reverse the order of the district court.

## I. BACKGROUND

Taxpayers Doye L. Bayird and his wife Judy L. Bayird are owners and operators of a used car dealership in Arkansas. During

the course of an Internal Revenue Service (IRS) civil tax audit, the Bayirds voluntarily produced some business and financial records for the years 1990 and 1991.[1]

Subsequent to the IRS investigation, the Bayirds became the targets of a federal grand jury investigation. In April 1994, the United States District Court for the Eastern District of Arkansas issued subpoenas to Randy Ishmael, the Bayirds' attorney, and Dale E. Coy, an accountant, requiring production of certain business and financial records of the Bayirds' in their possession. Specifically, the subpoenas sought the production of the following documents:

> [o]riginal records of Doye J. [sic] Bayird and Judy L. Bayird, and/or any business entity they have owned an interest in, which includes but is not limited to notes, letters, agreements, contracts, correspondence, schedules, workpapers, summaries, computer printouts, ledgers, journals, bank records (cancelled checks, statements, and deposits slips), loan applications, financial statements, contracts, recap sheets, car invoices, sales summaries, and any other documents regarding financial transactions for the periods of 1989, 1990, 1991, and 1992.

Appellant's Appendix at 3, 4.

The record indicates the following: all of the documents in the possession of the Bayirds' attorney and accountant are the Bayirds' private papers, as individuals and sole proprietors. No corporation or other entity exists in which the Bayirds have an interest. None of the documents are records of any entity other than the Bayirds as individuals. Appellants' Brief at ix. The Bayirds employed the attorney for the exclusive purpose of representing the Bayirds during the IRS investigation, and in preparation for possible litigation. The Bayirds' attorney did not possess the documents for any other purpose. Appellants' Appendix at 12–13. Although Dale E. Coy, the accountant, prepared the Bayirds' income tax returns for the year 1992, that is the only work that he performed for the Bayirds directly. The Bayirds' attorney employed Coy to assist him in representing the Bayirds in preparation for possible litigation. No distinction exists between the documents in the attorney's possession and the accountant's possession because the accountant acts as an agent for the Bayirds' attorney. Appellants' Appendix at 14. The government does not dispute any of these factual assertions, and, for purposes of this appeal, we consider these assertions as true.

The Bayirds filed a motion to quash the subpoenas, arguing that compliance with the subpoenas would violate their fifth amendment privilege against self-incrimination and violate their attorney-client privilege. In addition, the Bayirds contended that the scope of the subpoenas was overbroad and repetitious insofar as they relate to the years 1990 and 1991 because the IRS already examined the 1990 and 1991 documents. On April 21, 1994, the district court held a telephone hearing on the motion and determined that an *in camera* inspection would assist in determining which of the documents should be produced and directed the parties to submit briefs on the matter.

On May 24, 1994, after considering the briefs, but without an *in camera* inspection of the documents, the district court denied the Bayirds' motion to quash the subpoenas. Relying on *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) and *Doe v. United States*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), the district court focused on the issue of whether the act of production of the documents in question has testimonial and self-incriminating aspects. The district court held that because the act of production of the documents does not have testimonial and self-incriminating aspects, the Bayirds' fifth amendment privilege would not be violated. In addition, the district court also held that the subpoenas were not unreasonable, overbroad or repetitious.

On June 23, 1994, the district court denied the Bayirds' motion to reconsider and directed counsel to comply with the grand jury subpoena immediately. This appeal followed.

---

1. At oral argument, the Bayirds' attorney conceded that the fifth amendment does not protect the business and financial records voluntarily produced in the course of the IRS civil tax audit.

## II. DISCUSSION

The fifth amendment of the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Bayirds argue that compliance with the subpoenas would violate their fifth amendment privilege against self-incrimination. In addition, the Bayirds contend that the scope of the subpoenas is overbroad and unreasonable.

■ At oral argument, the government maintained that because the Bayirds' attorney possesses the documents, the Bayirds' fifth amendment privilege is no longer implicated. This contention lacks merit. When material has been transferred from a client to an attorney for the purpose of seeking legal advice and the subpoena is directed to the attorney, the proper inquiry is whether the subpoena, if directed to the client himself, would require compelled testimonial self-incrimination. *In re Grand Jury Subpoena (85-W-71-5)*, 784 F.2d 857, 860 (8th Cir.1986).

We now examine whether compliance with the subpoenas would violate the Bayirds' fifth amendment privilege against self-incrimination. In *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), the IRS served summonses on the taxpayers' attorneys for the production of tax returns that had been prepared by accountants. The Court held that the taxpayers' fifth amendment privilege would not be violated because the fifth amendment only protects compelled testimonial communications that are incriminating. The Court focused its analysis on the testimonial and incriminating nature of the act of producing documents and not on the contents of the documents themselves. The Court held that the act of producing documents in response to a subpoena "has communicative aspects of its own, wholly aside from the contents of the papers produced." *Id.* at 410, 96 S.Ct. at 1580–81.

The Court determined that the fifth amendment privilege could protect the act of production in response to a subpoena that has testimonial and self-incriminating aspects. *Id.* at 410–11, 96 S.Ct. at 1580–81.

The Court recognized that the act of producing documents can communicate testimonial aspects as to the existence of the documents, possession or control of the documents, or the authenticity of the documents. *Id.* at 410–13, 96 S.Ct. at 1580–82. The Court added that the question of whether the act of production was testimonial does not lend itself to categorical answers and depends on the facts and circumstances of a particular case. *Id.* at 410, 96 S.Ct. at 1580–81.

After analyzing whether the production of the accountants' workpapers involved testimonial self-incrimination, the Court determined that the existence and location of the papers were a "foregone conclusion" and that the taxpayers would add little to the government's case by conceding possession of the documents. *Id.* at 411–12, 96 S.Ct. at 1581–82. In addition, the Court held that the production of the documents would not authenticate the documents because the taxpayers did not prepare the documents and could not vouch for their accuracy. *Id.* at 413, 96 S.Ct. at 1582.

Subsequently, in *United States v. Doe*, 465 U.S. 605, 612, 104 S.Ct. 1237, 1242, 79 L.Ed.2d 552 (1984), the Supreme Court held that the fifth amendment did not protect the contents of business and tax records of a sole proprietorship because they had been voluntarily prepared. Relying on *Fisher*, the Court found that although the contents of the documents were not protected, the act of producing the individual's tax records in his possession may have testimonial and self-incriminating aspects. *Id.* The *Doe* Court determined that act of production of sole proprietor's documents was protected by the fifth amendment and could only be required through a grant of use immunity under 18 U.S.C. §§ 6002 and 6003. *Doe*, 465 U.S. at 612–14, 104 S.Ct. at 1242–43.

The Bayirds do not contend that they were compelled to create the documents or that they created the records involuntarily. The voluntary creation of the subpoenaed documents means that the contents of the documents do not fall under the protection of the fifth amendment. As *Fisher* instructs, the contents of voluntarily produced documents do not contain compelled testimonial evi-

dence. *Fisher,* 425 U.S. at 409, 96 S.Ct. at 1580.

Although the contents of the documents are not protected, the Bayirds argue that the act of producing the documents in response to the subpoenas would entail compelled testimonial self-incrimination. Relying on *Fisher* and *Doe,* the Bayirds contend the very act of producing the documents would admit the documents' authenticity, the existence of the documents, and their possession or control of the documents.

The government, not the taxpayer, bears the burdens of production and proof on the questions of the authenticity, possession, and existence of the summoned documents. *United States v. Rue,* 819 F.2d 1488, 1493 n. 4 (8th Cir.1987). The government claims that the act of production does not authenticate the documents because the attorney, not the Bayirds, is turning over the documents. We reject the government's position.

In *Fisher,* the Court stated that the taxpayer would be no more competent to authenticate the accountant's workpapers by producing them than he would be to authenticate them if testifying orally. *Fisher,* 425 U.S. at 413, 96 S.Ct. at 1582. "The taxpayer did not prepare the papers and could not vouch for their accuracy." *Id.* In *Fisher,* the taxpayer was not competent to testify as to the authenticity of the accountant's workpapers because he did not prepare the documents and could not vouch for their accuracy. *Id.* The competency to authenticate documents depends on who prepared the documents and who could vouch for their accuracy, and does not depend on who is actually turning over the documents.

For example, in *United States v. Porter,* 711 F.2d 1397 (7th Cir.1983), the IRS served subpoenas on the taxpayer's attorney, requiring the production of the taxpayer's business records, including cancelled checks, bank deposit slips, various ledgers, and other financial records. The Seventh Circuit held that the act of production of the sole proprietor's cancelled checks and deposit slips resulted in compelled testimony because the implicit authentication resulting from the act of production was undeniable. *Id.* at 1401. The taxpayer who prepared the checks and deposit slips, could vouch for their accuracy, and it is most likely that he was the party whose authentication would be most authoritative. *Id.*

Here, the subpoenaed documents are the Bayirds' private papers, as individuals and sole proprietors. The government has not provided any evidence indicating that the documents were not prepared by the Bayirds. On this record, compliance with the subpoenas would result in compelled testimony, violating the Bayirds' fifth amendment privilege, because the Bayirds, as preparers of the documents, would implicitly vouch for the genuineness of the documents.

The subpoenas require the production of all documents regarding financial transactions for the periods of 1989, 1990, 1991, and 1992. Turning over documents in response to the subpoenas authenticates the documents and reveals that some of the documents relate to financial transactions. This case is unlike *United States v. Rue,* 819 F.2d 1488 (8th Cir.1987). In *Rue,* the Eighth Circuit held that a doctor's act of producing patient cards did not violate his fifth amendment privilege because the IRS could independently establish the existence of the cards and the authenticity of the cards was a foregone conclusion. *Id.* at 1494. In this case, the government proffered no evidence suggesting that the Bayirds' documents could be independently authenticated, and therefore did not meet its burden of proof.

Furthermore, compliance with the subpoenas, in this case, would involve a testimonial act because of the broad-sweeping scope of the subpoenas. The act of turning over documents in response to a broad-sweeping subpoena may involve discretionary judgments about the documents themselves. The question is whether a subpoena requires the witness to discriminate among documents, thereby identifying information relevant to the authenticity of the documents. This determination is fact specific and dependent on the particular wording of the subpoena in question—the broader, more general, and subjective the language of the subpoena, the more likely compliance with the subpoena would be testimonial. *Cf. United States v.*

*Fox,* 721 F.2d 32, 38 (2d Cir.1983) (holding that enforcement of IRS summons of sole proprietorship would result in compelled testimonial communication and refusing to enforce broad-sweeping summons); *Porter,* 711 F.2d at 1401. *See generally* Robert P. Mosteller, *Simplifying Subpoena Law: Taking the Fifth Amendment Seriously,* 73 Va. L.Rev. 1, 12–13 (1987).

After reviewing the language of the subpoenas, the district court determined that the subpoenaed documents are clearly identified business and financial transactions records, prepared and maintained in the normal course of conducting the taxpayers' various spending and income-producing activities for the 1989–1992 tax period. We do not agree with this conclusion. The subpoenas require the production of all original records of the Bayirds, of any business entity they have owned an interest in and other documents regarding financial transactions for the years 1989, 1990, 1991, and 1992.

The language does not specifically describe the requested documents in an objective manner. Compliance with this broad language would require the witness to discriminate among documents, thereby providing identifying information that is relevant to the authenticity of the documents. "[A] subpoena compels the person receiving it by his own response to identify the documents delivered as the ones described in the subpoena." *United States v. Blank,* 459 F.2d 383, 385 (6th Cir.), *cert. denied,* 409 U.S. 887, 93 S.Ct. 111, 34 L.Ed.2d 143 (1972). In addition, testimonial conduct may be compelled if the subpoena requires a person to select documents used for a particular purpose. *See United States v. Beattie,* 522 F.2d 267, 268 (2d Cir.1975), *vacated,* 425 U.S. 967, 96 S.Ct. 2163, 48 L.Ed.2d 791, *cert. denied,* 425 U.S. 970, 96 S.Ct. 2165, 48 L.Ed.2d 793, *modified,* 541 F.2d 329 (1976) (subpoena requiring the production of accountant's workpapers used in the preparation of tax returns).

We conclude that the act of producing at least some of the subpoenaed documents would involve compelled testimonial self-incrimination in violation of the Bayirds' fifth amendment privilege. The government cannot enforce the subpoenas without granting use immunity pursuant to 18 U.S.C. §§ 6002, 6003 or significantly narrowing the scope of the subpoenas.

Accordingly, the order of the district court denying the Bayirds' motion to quash is, therefore, reversed.