**In re GRAND JURY SUBPOENA, DATED APRIL 18, 2003,**

**John Doe, Appellant,**

v.

**United States of America, Appellee.**

No. 04–10097.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 17, 2004.

Filed Sept. 2, 2004.

Catherine Morris, Orrick, Herrington & Sutcliffe LLP, San Francisco, CA, for the appellant.

Andrea Limmer, U.S. Department of Justice, Appellate Section, Antitrust Division, Washington, DC, for appellee.

Before HUG, JR., CANBY, JR., and TALLMAN, Circuit Judges.

CANBY, Circuit Judge.

Appellant John Doe was held in contempt by the district court and he appeals, challenging the district court's denial of his motion to quash a subpoena *duces tecum.* The government served Doe with the subpoena in conjunction with an antitrust investigation into price fixing in the Dynamic Random Access Memory chip market. We conclude that, because of the breadth of the subpoena and the government's limited knowledge of the documents sought, Doe's production of the documents would have a testimonial aspect protected by the Fifth Amendment right against self-incrimination. We therefore reverse and remand.

**Factual Background**

This appeal presents a challenge to one of several subpoenas issued in connection with the government's investigation into antitrust violations in the Dynamic Random Access Memory (DRAM) semiconductor memory chip industry. On June 17, 2002, a grand jury sitting in the Northern District of California issued subpoenas *duces tecum* to all the major worldwide DRAM manufacturers, including Doe's former employer (the "Corporation"). The subpoena served on the Corporation covered the period from January 1, 1998, through the date of the subpoena and requested, among other things, all documents relating to contacts and communications among competitors regarding the sale of DRAM. The subpoena also asked the Corporation for the names of all its current and former employees who had any responsibility for pricing DRAM, as well as the calendars, appointment books, telephone directories, and travel and entertainment expense records on file for those employees.

The Corporation identified Doe as an employee who was responsible for pricing DRAM. Doe worked for the Corporation from 1991 through 1998. The documents produced by the Corporation in response to the subpoena did not reveal any calendars, appointment books, notebooks, address books, or business diaries for Doe. These types of materials were found in the employee records of other DRAM salesmen, including Doe's successor.

During the government's investigation, a cooperating witness from another DRAM manufacturer provided detailed information regarding meetings and telephone conversations he had with Doe, in which they discussed the price at which the Corporation and its competitors would sell DRAM to computer manufacturers. After the government obtained this information, FBI agents interviewed Doe at his home in April 2003. During the interview, Doe indicated that he had shared DRAM pricing information with competitors, including the government's cooperating witness. Doe further stated that he had memorialized these conversations in e-mails to his supervisors. Doe stated, however, that he did not believe he had any records, notes, or documents related to the government's investigation because he had left such records at the Corporation. At the end of the interview, the agents served Doe with a subpoena *duces tecum*, which is the subject of this appeal. The subpoena commanded Doe to appear and testify before the grand jury and bring with him all documents in his possession "relating to the production or sale of Dynamic Random Access Memory ('DRAM') components, including but not limited to, handwritten notes, calendars, diaries, daybooks, appointment calendars, or notepads, or any similar documents."

Following this interview, the government served the Corporation with another subpoena *duces tecum*, which was identical in all respects to the June 17, 2002, subpoena, except that it requested documents from the period of January 1, 1996 through December 31, 1997. This subpoena produced a few documents that Doe had created in his employment at the Corporation, but nowhere near the volume that had been created by other employees.

Doe, claiming a Fifth Amendment privilege against self-incrimination, informed the government that he would not testify without immunity and would not produce the subpoenaed documents. The government postponed indefinitely Doe's appearance before the grand jury, but did not relieve him of his obligation to produce the documents described in the subpoena *duces tecum*, nor did the government offer Doe immunity under 18 U.S.C. § 6003. Instead, the government informed counsel for the Corporation that Doe might have documents responsive to the subpoenas served on the Corporation. The Corporation requested from Doe "any company records or property" that may be in Doe's possession and covered by the Proprietary Information Agreement or the Exit Interview statement that Doe had signed. Without admitting that he had any company records in his possession, Doe declined to produce any such documents to the Corporation.

Doe then moved to quash the subpoena that had been served on him, claiming that the act of producing the documents responsive to the subpoena would violate his Fifth Amendment rights. The district court denied the motion to quash, finding that the existence of Doe's documents was a "foregone conclusion," and therefore the act of producing the documents was not testimonial in nature. Doe again refused to turn over any documents and was held in contempt by the district court pursuant to a Stipulation and Order of Contempt.

Doe timely appealed, and enforcement of the contempt order has been stayed pending appeal.

### Jurisdiction and Standard of Review

 Because Doe has been held in contempt, we have jurisdiction over his appeal of the contempt order and the denial of his motion to quash the subpoena. *See In re Grand Jury Subpoenas Dated December 10, 1987,* 926 F.2d 847, 852–53 (9th Cir.1991). We review for an abuse of discretion the denial of a motion to quash a subpoena. *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.),* 357 F.3d 900, 906 (2004) (amended opinion). "A district court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* (quoting *Gerling Global Reinsurance Corp. v. Low,* 240 F.3d 739, 743 (9th Cir.2001)).

### The Fifth Amendment and Compelled Document Production

 The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. The Fifth Amendment protects a person solely against compelled self-incrimination. *See United States v. Doe,* 465 U.S. 605, 610, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984); *Fisher v. United States,* 425 U.S. 391, 401, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). Where the preparation of business records

is voluntary, there is no compulsion present, and consequently the contents of those records are not privileged by the Fifth Amendment. *See Doe,* 465 U.S. at 610, 104 S.Ct. 1237. It is not contested that the documents in Doe's possession were created voluntarily during the course of his employment with the Corporation. The contents of those documents are therefore not protected by the Fifth Amendment.

 Doe's claim of privilege is directed, however, not to the documents themselves but to the act of producing the documents.[1] A witness' production of documents in response to a subpoena may have incriminating testimonial aspects. *See United States v. Hubbell,* 530 U.S. 27, 36, 120 S.Ct. 2037, 147 L.Ed.2d 24 (2000) (*Hubbell II*); *Fisher,* 425 U.S. at 410, 96 S.Ct. 1569. By producing documents in compliance with a subpoena, the witness admits that the documents exist, are in his possession or control, and are authentic. *See Hubbell II,* 530 U.S. at 36, 120 S.Ct. 2037. These types of admissions implicitly communicate statements of fact that may lead to incriminating evidence. *See id.* at 36, 38, 120 S.Ct. 2037. Whether the act of production has a testimonial aspect sufficient to attract Fifth Amendment protection is a fact-intensive inquiry. *See Fisher,* 425 U.S. at 410, 96 S.Ct. 1569 (stating the resolution of whether documents are testimonial "depend[s] on the facts and

---

1. The government asserts that because the documents in Doe's possession are business records that were created during his employment with the Corporation, they are corporate documents that should be subject to production under the "collective entity" rule. The collective entity rule provides that an individual is not permitted to invoke a Fifth Amendment privilege with respect to records of a collective entity, such as a corporation. *See Wilson v. United States,* 221 U.S. 361, 380, 31 S.Ct. 538, 55 L.Ed. 771 (1911). The govern-

ment concedes, however, that our panel is bound to follow this circuit's decision in *In re Grand Jury Proceedings (Mora),* which held that the collective entity rule does not apply to a former employee who is no longer acting on behalf of the collective entity. *See* 71 F.3d 723, 724 (9th Cir.1995); *see also In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983 and June 22, 1983,* 722 F.2d 981, 986–87 (2d Cir.1983). We therefore treat any and all records Doe possesses as his personal records.

circumstances of particular cases or classes thereof").

In this case, the district court found that Doe's act of producing documents responsive to the government's subpoena "will have no adverse effect on movant as the government has adequately demonstrated its prior, extensive knowledge of the facts and potentially incriminating evidence associated with [Doe's] involvement in price-fixing activities currently under investigation." We conclude that the district court erred in determining that the government had established that the existence, possession, and authenticity of the documents sought was a foregone conclusion and in refusing to examine the documents *in camera* to determine whether Doe's act of producing them would have incriminating aspects.

1. *Existence and Possession of the Documents*

 When the "existence and location" of the documents under subpoena are a "foregone conclusion" and the witness "adds little or nothing to the sum total of the Government's information by conceding that he in fact has the[documents]," then no Fifth Amendment right is touched because the "question is not of testimony but of surrender." *Fisher*, 425 U.S. at 411, 96 S.Ct. 1569 (quoting *In re Harris*, 221 U.S. 274, 279, 31 S.Ct. 557, 55 L.Ed. 732 (1911)). The government "bears the burdens of production and proof on the questions of ... possession[ ] and existence of the summoned documents." *In re Grand Jury Proceedings, Subpoenas for Documents*, 41 F.3d 377, 380 (8th Cir. 1994). When deciding whether the government has met its burdens of production and proof, courts should look to the "quantum of information possessed by the government *before* it issued the relevant subpoena." *United States v. Hubbell*, 167 F.3d 552, 569 (D.C.Cir.1999), *aff'd*, 530 U.S. 27, 120 S.Ct. 2037, 147 L.Ed.2d 24 (2000) (*Hubbell I* ) (emphasis added); *see also United States v. Rue*, 819 F.2d 1488, 1493 (8th Cir.1987) ("The relevant date on which existence and possession of the documents must be shown is the date on which the [subpoena] is served, for it is at that time that the rights and obligations of the parties become fixed.").

 At the time the government served the subpoena on Doe, the government possessed insufficient information to make the existence or possession of all of Doe's documents relating to the production or sale of DRAM, "including, but not limited to, handwritten notes, calendars, diaries, daybooks, appointment calendars, or notepads, or any similar documents" a foregone conclusion. The government was not required to have actual knowledge of the existence and location of each and every responsive document; the government was required, however, to establish the existence of the documents sought and Doe's possession of them with "reasonable particularity" before the existence and possession of the documents could be considered a foregone conclusion and production therefore would not be testimonial. *See Hubbell II*, 530 U.S. at 44, 120 S.Ct. 2037; *Hubbell I*, 167 F.3d at 579; *In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992*, 1 F.3d 87, 93 (2d Cir. 1993).

Although the government possessed extensive knowledge about Doe's price-fixing activities as a result of interviews with cooperating witnesses and Doe's own incriminating statements made to federal agents on April 26, 2003, it is the government's knowledge of the existence and possession of the actual documents, not the information contained therein, that is central to the foregone conclusion inquiry. *See Hubbell I*, 167 F.3d at 580. The

breadth of the subpoena in this case far exceeded the government's knowledge about the actual documents that Doe created or possessed during his former employment and that he retained after he terminated his employment. The government probably could identify with sufficient particularity the existence of e-mails between Doe and some of his competitors, e-mails between Doe and his superiors regarding pricing, phone records corroborating that Doe spoke to his competitors, and records establishing meetings with certain competitors because Doe made substantial admissions to investigators during his living room interview regarding these documents. The government, however, failed to draft the subpoena narrowly to identify the documents that it could establish with reasonable particularity. Thus, on the record before us, the subpoena's breadth far exceeded the reasonably particular knowledge that the government actually possessed when it served the subpoena on Doe.

The Supreme Court has stated on more than one occasion that such broad language contributes to a finding that the response to a subpoena may be testimonial. In *Hubbell*, the Supreme Court noted:

> It is apparent from the text of the subpoena itself that the prosecutor needed respondent's assistance both to identify potential sources of information and to produce those sources.... Given the breadth of the description of the 11 categories of documents called for by the

subpoena, the collection and production of the materials demanded was tantamount to answering a series of interrogatories asking a witness to disclose the existence and location of particular documents fitting certain broad descriptions.

*Hubbell II*, 530 U.S. at 41, 120 S.Ct. 2037.[2] A subpoena such as this, which seeks all documents within a category but fails to describe those documents with any specificity indicates that the government needs the act of production to build its case against Doe.

This conclusion is supported by the timing of the subpoena in Doe's case. When the government issued its April 26, 2003, subpoena *duces tecum* to Doe, it had not yet served the May 19, 2003, second document subpoena on Doe's former employer, the response to which subsequently led the government to conclude that Doe possessed business records that were created during his former employment. It is the "quantum of information possessed by the government before it issue[s] the relevant subpoena" that is central to the foregone conclusion inquiry. *See Hubbell I*, 167 F.3d at 569; *Rue*, 819 F.2d at 1493. At the time the government served the subpoena *duces tecum* on Doe, it had no reason to believe that Doe possessed the myriad of documents it sought. The argument that a salesman such as Doe will always possess business records describing or memorializing meetings or prices does not establish the reasonably particular knowl-

---

**2.** *See also Doe*, 465 U.S. at 614 n. 12, 104 S.Ct. 1237 ("The most plausible inference to be drawn from the broad-sweeping subpoenas is that the Government, unable to prove that the subpoenaed documents exist ... is attempting to compensate for its lack of knowledge by requiring the appellee to become, in effect, the primary informant against himself.") (quoting the appellate court); *In re Grand Jury Proceedings, Subpoenas for Documents*, 41 F.3d at 380 ("[T]he broader, more general, and subjective the language of the subpoena, the more likely compliance with the subpoena would be testimonial."); *United States v. Fox*, 721 F.2d 32, 38 (2d Cir.1983) ("The inference we draw from this broad-sweeping summons is that the government is attempting to compensate for its lack of knowledge by requiring [the witness] to become the primary informant against himself.").

edge required. *See Hubbell II,* 530 U.S. at 45, 120 S.Ct. 2037. It was therefore improper for the district court to consider evidence of Doe's business records produced by Doe's former employer in response to the May 19, 2003, subpoena to support the foregone conclusion inquiry.

### 2. *Authenticity of the Documents*

▮ The authenticity prong of the foregone conclusion doctrine requires the government to establish that it can independently verify that the compelled documents "are in fact what they purport to be." *United States v. Stone,* 976 F.2d 909, 911 (4th Cir.1992); *see also In re Grand Jury Proceedings,* 41 F.3d at 380 (stating that the government bears the burdens of production and proof on the question of authenticity). Independent verification not only requires the government to show that the documents sought to be compelled would be admissible independent of the witness' production of them, but also inquires into whether the government is compelling the witness to use his discretion in selecting and assembling the responsive documents, and thereby tacitly providing identifying information that is necessary to the government's authentication of the subpoenaed documents. *See In re Grand Jury Proceedings,* 41 F.3d at 381 (noting that "[c]ompliance with this broad language would require the witness to discriminate among documents, thereby providing identifying information that is relevant to the authenticity of the documents."); *United States v. Fox,* 721 F.2d 32, 39 (2d Cir.1983) (noting that the government needed an admission by the subpoena recipient that the subpoenaed documents were records matching the terms of the subpoena for authentication).

▮ In this case, the district court simply stated it would "hold the government to its representation that [Doe's] testimony via production of these documents will not be needed for authentication," without explaining why this was an appropriate solution to overcome Doe's Fifth Amendment challenge. The subpoena commanded Doe to produce all documents "relating to the production or sale of Dynamic Random Access Memory ("DRAM") components, including but not limited to, handwritten notes, calendars, diaries, daybooks, appointment calendars, or notepads, or any similar documents." It thus sought many documents that Doe created himself. It further required him to discriminate among the many documents he might possess, requiring him specifically to identify and produce to the grand jury those that related to the production or sale of DRAM.

Although the government could probably authenticate the writing on Doe's handwritten documents through handwriting analysis, it made little effort to demonstrate how anyone beside Doe could sift through his handwritten notes, personal appointment books, and diaries to produce what Doe's attorney estimates may be 4,500 documents related to the production or sale of DRAM. Such a response by Doe would provide the government with the identifying information that it would need to authenticate these documents. *See In re Grand Jury Proceedings,* 41 F.3d at 380; *Fox,* 721 F.2d at 39. Doe's notes to himself would be difficult, if not impossible, to authenticate by anyone besides Doe. The government's promise to authenticate the documents through an independent source, without more, "does not adequately protect [the defendant's] constitutional right against self-incrimination." *In re Thirteen Grand Jury Subpoenas,* 1988 WL 88421, at *1 (E.D.N.Y.1988).

The Eighth Circuit in *In re Grand Jury Proceedings* noted,

> [C]ompliance with the subpoenas, in this case, would involve a testimonial

act because of the broad-sweeping scope of the subpoenas. The act of turning over documents in response to a broadsweeping subpoena may involve discretionary judgments about the documents themselves. The question is whether a subpoena requires the witness to discriminate among documents, thereby identifying information relevant to the authenticity of the documents. This determination is fact specific and dependent on the particular wording of the subpoena in question—the broader, more general, and subjective the language of the subpoena, the more likely compliance with the subpoena would be testimonial.

41 F.3d at 380. In this case, the government has failed to demonstrate that it can authenticate the documents so broadly described in the subpoena without the identifying information that Doe would provide by using his knowledge and judgment to sift through, select, assemble, and produce the documents.

This case is a far cry from *Fisher,* where the government had prior knowledge that the documents were in the custodian's possession and the government could independently confirm their existence and authenticity through the accountants who created them. *See* 425 U.S. at 412–13, 96 S.Ct. 1569. The government in *Fisher* did not need to rely on the " 'truth-telling' of the taxpayer to prove the existence of or his access to the documents." *Id.* at 411, 96 S.Ct. 1569. Here, as in *Hubbell,* the government simply has not shown that it had prior knowledge of the existence of the estimated 4,500 documents.[3]

## Conclusion

The district court erred when it determined that the act of producing these documents was not testimonial because their existence, possession, and authenticity was a "foregone conclusion." We accordingly reverse its order denying on that ground Doe's motion to quash the subpoena, and its order holding Doe in contempt. The district court did not reach the question whether production by Doe, which we hold to be testimonial, would be incriminating. We decline to rule on that issue in the first instance. We accordingly remand for further proceedings in which the district court is free to determine that question. If the testimonial production would be incriminating, the motion to quash should be granted unless the government secures an immunity order pursuant to 18 U.S.C. § 6003. *See Doe,* 465 U.S. at 617, 104 S.Ct. 1237.

**REVERSED and REMANDED.**

---

**3.** We recognize that *Hubbell* is slightly distinguishable. There, the government had granted act of production immunity and Hubbell later asserted that his immunity had been violated when the government used the documents it had subpoenaed from him to discover incriminating evidence, which the government then used to indict him. *See Hubbell II,* 530 U.S. at 45, 120 S.Ct. 2037 (citing *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972)). The Supreme Court determined that the government made improper derivative use of the testimonial aspect of Hubbell's immunized act of producing documents in response to the subpoena. *Id.* at 42–45, 120 S.Ct. 2037.