**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

<table>
<tr><td>

UNITED STATES OF AMERICA,
                *Plaintiff-Appellee*,

v.

SIDEMAN & BANCROFT, LLP,
                *Defendant-Appellant*.

</td><td>

No. 11-15930

D.C. No.
3:11-cv-00736-
WHA

OPINION

</td></tr>
</table>

Appeal from the United States District Court
for the Northern District of California
William Alsup, District Judge, Presiding

Argued and Submitted
September 13, 2012—San Francisco, California

Filed January 8, 2013

Before: J. Clifford Wallace, Susan P. Graber,
and Marsha S. Berzon, Circuit Judges.

Opinion by Judge Wallace

## SUMMARY*

### Tax

The panel affirmed the district court's order enforcing an Internal Revenue Service administrative summons in connection with a criminal investigation of an individual taxpayer.

Certain of taxpayer's documents had made their way from her residence to appellant, her counsel for the IRS criminal investigation. The panel held that the "foregone conclusion" exception to the Fifth Amendment applied to the documents because, before the IRS issued the subpoena, it knew with reasonable particularity of the existence and appellant's possession of the documents and could independently establish their authenticity based on taxpayer's tax preparer's familiarity with them.

### COUNSEL

Jay R. Weill (argued), Sideman & Bancroft LLP, San Francisco, California, for Appellant.

Tamara W. Ashford, Deputy Assistant Attorney General, Washington, D.C.; Michael J. Haungs (argued) and John A. Dudeck, Jr., United States Department of Justice, Tax Division, Washington, D.C., for Appellee.

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

WALLACE, Circuit Judge:

Sideman & Bancroft, LLP (Sideman) appeals from the district court's order enforcing an Internal Revenue Service (IRS) administrative summons. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

**I.**

The IRS is currently undertaking a criminal investigation of Mary Nolan to determine whether she attempted to evade or defeat her tax liabilities or made a false declaration under penalty of perjury related to tax years 2005 to 2008. As part of that investigation, the IRS obtained a search warrant to locate Nolan's tax documents for those years. On October 13, 2010, the IRS executed the search warrant, looking for the documents in Nolan's residence, business, and car. The IRS failed to locate the documents it sought while executing the search warrant but did find references to Nolan's income tax preparer, accountant Mary Fouts.

As the next step in the investigation, Special Agent Mark Pahnke contacted Fouts. Fouts indicated that Nolan had given her tax documents for the years 2007 and 2008. Fouts explained that she no longer had the documents as she had delivered them to Nolan's civil tax attorney, Richard Guadagni. Special Agent Pahnke subsequently contacted Guadagni, who informed him that he had given the documents he received from Fouts to Jay R. Weill, partner at Sideman, Nolan's counsel for the IRS criminal investigation.

Special Agent Pahnke then drafted a summons to obtain the records from Sideman. Special Agent Pahnke identified the documents he sought from Sideman in his summons based on the detailed description of the documents given to him by Fouts. Fouts confirmed that she had given Special Agent Pahnke a detailed description of the documents she turned over to Guadagni.

On October 27, 2010, the IRS issued a summons to Sideman seeking the 2007 and 2008 tax documents turned over by Fouts via Guadagni. The summons specifically required Sideman to produce the following documents:

> FOR THE YEARS: 2007–2008
>
> Documents in your custody or control relative to the financial transaction of:
>
> MARY NOLAN
> THE LAW OFFICE OF MARY NOLAN
> MARY NOLAN TRUST
>
> Including but not limited to the following:
>
> Check Carbons (duplicates)
> Client Receipts
> File Folders of Expenses
> Payment Receipts
> QuickBooks Printouts
> Client Billing Records
> Rental Property Records
> Tax Returns and Supporting Schedules
> Monthly Client Billings
> Check Ledgers

> Copies of Bills
> Daytime Planners
> Credit Card Statements
> Personal Tax Related Expenses (ie: medical & dental)
>
> Included in the following containers:
>
> 4 large banker boxes
> 3 large accordion folders

Sideman refused to produce these documents—which measure sixty-six inches if stacked on top of one another, according to Sideman—because, Sideman alleges, production would violate Nolan's Fifth Amendment rights. In response, the IRS filed a petition in the Northern District of California seeking enforcement of the summons.

In support of its petition to enforce the summons, the IRS offered a declaration from Fouts regarding her work on behalf of Nolan. In her declaration, Fouts stated that she took possession of Nolan's 2007 and 2008 tax records on September 14, 2010. Guadagni delivered additional records to her a few days later. Fouts began reviewing Nolan's 2007 and 2008 tax records on October 1. On October 4, Fouts spent additional time reviewing the tax records. From October 4 to October 12, Fouts completed her review of Nolan's 2009 tax records and finished the return for that same year. In finalizing Nolan's 2009 return, Fouts also reviewed Nolan's 2008 tax records to "make sure that certain information from 2008 was carried over properly to 2009, and [she also] reviewed the 2007 records for consistency."

Through this review process, Fouts became very familiar with Nolan's tax documents. In her declaration submitted to the district court, Fouts stated that Nolan's tax records were distinct for a number of reasons. First, the records reflected that Nolan did not operate her law practice as a corporation, which was unusual to Fouts because most practitioners with a similar level of income operate their practices that way. Second, Fouts identified the amount of monthly income for Nolan's law practice during the years 2008 to 2009, observing that it was "fairly consistent" month to month. Fouts also recalled and stated the law practice's income for the year 2007. Third, Fouts stated that Nolan paid all of her individual and business expenses with checks that she wrote and signed by hand. Fouts also explained that Nolan maintained handwritten check registers and checkbooks that produced carbon copies. Fourth, Fouts reported that Nolan treated her workers as independent contractors rather than employees. Fifth, Fouts stated that Nolan and her paralegals kept track of their billable time via handwritten notations in appointment books. Nolan's staff would then convert the handwritten notes to client bills using a QuickBooks software program. A paper copy of each bill would be placed in a folder kept for each client. Lastly, Fouts reported that Nolan had numerous residential properties, including rentals, and a vacation home.

Fouts also confirmed in her declaration that she had given Nolan's tax records to Guadagni after becoming concerned that they were covered by the IRS summons, which Nolan had told her about. She further declared that she learned that Guadagni did not give the documents to the IRS as she had thought he would but instead gave them to Sideman. Fouts also described how she gave a "detailed description" of the 2007 and 2008 documents to Special Agent Pahnke. She also

confirmed that the summons, reproduced above, conforms to the description she gave to Special Agent Pahnke and "accurately summarizes the documents [she reviewed] in the course of [her] work for Nolan, down to the type of boxes and folders the documents were contained in on October 13, 2010 when [she] saw them last." Fouts explained that she "is confident that if [she] saw Nolan's 2007–2008 documents again, [she] could identify and authenticate them, based on the personal knowledge [she] gained from reviewing and working with them and based on their distinctive characteristics and contents."

The district court granted the IRS's petition to enforce, finding that the summonsed documents fell within the "foregone conclusion" exception to the Fifth Amendment. The district court limited the scope of the summons, however, by striking the language "including but not limited to the following" from the summons and replacing it with "specifically the following." Sideman now appeals.

## II.

"We review de novo a district court's application of the Fifth Amendment privilege against self-incrimination." *United States v. Bright*, 596 F.3d 683, 690 (9th Cir. 2010). "Whether the existence of documents is a foregone conclusion is a question of fact, which we review for clear error." *Id.* We also review for clear error a finding as to whether the authenticity of documents is a foregone conclusion. *United States v. Doe*, 465 U.S. 605, 613–14 (1984).

"The Fifth Amendment grants persons the privilege not to provide the State with [self-incriminatory] evidence of a

testimonial or communicative nature." *Id.* at 692 (alteration in original) (internal quotation marks omitted). This protection extends not only to oral questioning but also applies to prevent an individual from having to produce documents for investigative bodies if the act of production itself would be testimonial. *Id.* at 691. This protection also extends to prevent an individual's attorney from being compelled to produce documents if that production would violate the individual's Fifth Amendment rights. In *Fisher v. United States*, 425 U.S. 391 (1976), the Supreme Court explained that where an individual transfers documents to his or her attorneys to obtain legal assistance in tax investigations, those documents, "if unobtainable by summons from the client, are unobtainable by summons directed to the attorney by reason of the attorney-client privilege." *Id.* at 405. Accordingly, Sideman does not have to produce the tax records if doing so violates Nolan's Fifth Amendment rights.

Sideman contends that, here, the act of producing Nolan's 2007 and 2008 tax documents would be testimonial in violation of Nolan's Fifth Amendment rights. Production of documents may be testimonial because

> [t]he act of producing evidence in response to a subpoena . . . has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena.

*Id.* at 410. Nevertheless, "where '[t]he existence and location of the papers are a foregone conclusion and the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers[,] . . . enforcement of the summons' does not touch upon constitutional rights." *Bright*, 596 F.3d at 692 (quoting *Fisher*, 425 U.S. at 411). For the "foregone conclusion exception to apply, the government must establish its independent knowledge of three elements: the documents' existence, the documents' authenticity and respondent's possession or control of the documents." *Id.*

We now consider whether the district court clearly erred in determining that the foregone exception applies here. We look first at the existence and possession elements and then address authenticity.

**A.**

The Government "'bears the burdens of production and proof on the questions of . . . possession[ ] and existence of the summoned documents.'" *In re Grand Jury Subpoena, Dated Apr. 18, 2003*, 383 F.3d 905, 910 (9th Cir. 2004) (quoting *In re Grand Jury Proceedings, Subpoenas for Documents*, 41 F.3d 377, 380 (8th Cir. 1994)). This is a highly fact-intensive inquiry that looks at the "'quantum of information possessed by the government *before* it issued the relevant subpoena.'" *Id.* (quoting *United States v. Hubbell*, 167 F.3d 552, 569 (D.C. Cir. 1999), *aff'd*, 530 U.S. 27 (2000)).

Here, the "quantum of information" possessed by the IRS prior to its issuance of the summons as to the existence and possession of the summonsed document is substantial. The

IRS learned that Fouts had been retained to prepare Nolan's amended income tax returns for the years 2007 and 2008. Fouts identified for the IRS the documents that Nolan had given her to prepare the 2007 and 2008 amended returns. The documents Fouts identified became the list of documents Special Agent Pahnke identified in the summons. Further, Fouts told the IRS that these documents were contained in four bankers boxes and three accordion folders.

The IRS had precise knowledge of the location of these boxes and folders and the documents contained therein. IRS agents learned from Fouts that she delivered the tax records to Nolan's civil attorney, Guadagni. Special Agent Pahnke contacted Guadagni and learned that Guadagni had given the documents to Nolan's criminal attorney at Sideman. Thus, from its investigation, the IRS knew with "reasonable particularity" the existence and Sideman's possession of Nolan's 2007 and 2008 tax records prior to issuing the summons. *See In re Grand Jury Subpoena, Dated Apr. 18, 2003*, 383 F.3d at 910. The district court's findings of existence and possession were not clearly erroneous.

## B.

"The authenticity prong of the foregone conclusion doctrine requires the government to establish that it can independently verify that the compelled documents 'are in fact what they purport to be.'" *Id.* at 912 (quoting *United States v. Stone*, 976 F.2d 909, 911 (4th Cir. 1992)). We have explained that not only must the Government show that it can independently establish that the summonsed documents are what they purport to be, it must demonstrate that it is not "compelling the [taxpayer] to use his discretion in selecting and assembling the responsive documents, and thereby tacitly

providing identifying information that is necessary to the government's authentication of the subpoenaed documents." *Id.*

We therefore now turn to whether the Government has met its burden of demonstrating that it can independently verify that the summonsed tax documents "are what they purport to be" thanks to Fouts's familiarity with those documents. During her interview with IRS agents, Fouts "gave them a detailed description of the 2007–2008 documents that [she] had in [her] possession." It is apparent from Fouts's declaration submitted to the district court that she was very familiar with Nolan's tax records. Fouts described key details about the records, including that Nolan ran her business as a sole proprietorship; that Nolan's law practice grossed consistent income from month to month; that Nolan paid her individual and business expenses with hand-written checks she signed herself; that Nolan classified those working for her as independent contractors rather than employees; that Nolan recorded her billable time in a "dayplanner" appointment book and used QuickBooks to create a bill for each client; and that Nolan owned several rental properties in addition to her residence. Fouts also described the containers in which those documents were stored: four large banker boxes and three large accordion folders.

Sideman contends that Fouts could not have sufficiently familiarized herself with the sixty-six inch stack of documents that comprise Nolan's 2007 and 2008 tax records because, Sideman asserts, Fouts spent only forty-five minutes reviewing those documents. We are not persuaded by this argument for two reasons: First, our review of the record reveals that Fouts spent more than forty-five minutes

reviewing the summonsed records. The statement of account Fouts sent to Nolan, which itemizes the time Fouts spent reviewing Nolan's tax records, does state that on October 1, 2010, Fouts spent 0.75 hours reviewing Nolan's 2007 and 2008 tax records. But the statement of account also contains an October 4, 2010 entry of 1.75 hours indicating that in addition to performing other tasks, Fouts continued her review of the prior years tax documents on that day. Fouts also declared that from October 4 to October 12, 2010, she prepared Nolan's 2009 tax return. As part of that process, Fouts compared the 2009 tax records to Nolan's 2008 and 2007 tax records to check for consistency. Thus, although the precise amount of time Fouts spent reviewing the 2007 and 2008 tax records is not clear, she did spend more time reviewing the summonsed documents than the forty-five minutes Sideman alleges.

Second, as pointed out above, Fouts can provide numerous details about Nolan's tax records. Indeed, due to her extensive knowledge of Nolan's tax records as described in her declaration, there is a foundation for Fouts's statement that she is "confident that if [she] saw Nolan's 2007–2008 documents again, [she] could identify and authenticate them, based on the personal knowledge [she] gained from reviewing and working with them and based on their distinctive characteristics and contents." In addition, for many of the items, the Government does not need to rely solely on Fouts's ability to authenticate the documents. Indeed, Nolan's billing and payment records could be verified by comparing those records and Nolan's bank records. *See Bright*, 596 F.3d at 693; *United States v. Schlansky*, 709 F.2d 1079, 1083 (6th Cir. 1983). Thus, regardless of the exact amount of time Fouts spent reviewing the summonsed documents, the

Government has established that it is able to independently authenticate the summonsed records.

Sideman also contends that Nolan should be granted "act-of-production" immunity prior to Sideman's being compelled to turn over Nolan's tax records, some of which were prepared by Nolan herself. In support of its argument, Sideman cites to a 2001 under-seal proceeding in the Northern District of California to which Sideman was a party. *See In re Grand Jury Subpoena to Richard Sideman, Sideman & Bancroft LLP, Dated June 14, 2001*, No. CR-01-219-MISC-MHP (N.D. Cal. Mar. 3, 2001). In that proceeding, the district court ruled that Sideman's production of certain tax records of its client would "implicitly authenticate" those records, *i.e.*, act as an admission that the documents were authentic. *Id.* at 6. Accordingly, the district court explained that before it could compel production of the documents, it had to grant Sideman's client immunity and agree to a protective order forbidding the Government from referring to the production. *Id.* at 10. Sideman argues that the 2001 case supports the contention that production of Nolan's documents will "constitute an admission that the specific documents sought in the summons were in Sideman's possession . . . and that they therefore exist and are authentic."

The district court's decision in the 2001 proceeding rests on the conclusion that because the accountant could not independently authenticate certain tax records produced by the sole proprietorship, the foregone conclusion exception did not apply to those records. However, merely because Nolan prepared some of the records personally is not necessarily an impediment to applying the foregone conclusion exception to the Fifth Amendment protection against testimonial production. *See Doe*, 465 U.S. at 614 n.13 (explaining that, in

the context of subpoenas for documents from sole proprietorship companies, the Government was not "foreclosed from . . . producing evidence that possession, existence, and authentication [of the subpoenaed documents] were a 'foregone conclusion'"). Unlike the accountant in the 2001 case Sideman cites, Fouts can independently verify that the tax documents are what they purport to be: Nolan's 2007 and 2008 tax records. Nothing further is required to authenticate the documents and thus, Sideman's production is not a necessary link in the chain of evidence for the documents to be admissible. *See, e.g.*, Fed. R. Evid. 901(b)(1), (4). Accordingly, the district court did not err in enforcing the summons despite the Government's failure to grant Nolan act-of-production immunity.

Finally, the Government has met its burden of demonstrating that it "can authenticate the documents . . . described in the [summons] without the identifying information that [Nolan] would provide by using h[er] knowledge and judgment to sift through, select, assemble, and produce the documents." *In re Grand Jury Subpoena, Dated Apr. 18, 2003*, 383 F.3d at 913. Sideman argues that the district court's order would require Nolan to review the summons and numerous documents in Sideman's possession and then produce only the documents specifically listed in the summons. The district court limited the scope of the summons to include only those items identified in the summons. Thus, Nolan will not have to look at  any document not found in the identified bankers boxes and accordion folders. Moreover, Sideman's argument that Nolan will have to sort through the documents in the bankers boxes and accordion folders is moot because the Government agreed in open court that the delivery of the four bankers boxes and three large accordion folders identified in the

summons, with their contents as delivered to Sideman, will adequately comply with the summons. As a result, prior to Sideman's production of the documents, Nolan will not have to "discriminate among documents, thereby identifying information relevant to the authenticity of the documents." *Id.* (quoting *In re Grand Jury Proceedings: Subpoena for Documents*, 41 F.3d 377, 380 (8th Cir. 1994)).

Accordingly, we conclude that the district court's finding that the IRS could independently authenticate Nolan's 2007 and 2008 tax records contained in the identified collection of boxes and folders currently held by Sideman was not clearly erroneous.

Based on the facts found, which we hold were not clearly erroneous, we conclude that the district court did not err in applying the foregone conclusion exception when enforcing Sideman's compliance with the summons.

**AFFIRMED.**