UNITED STATES of America,
Plaintiff–Appellee,

v.

Leslie A. GRABLE, Defendant–Appellant.

No. 96–1339.

United States Court of Appeals,
Sixth Circuit.

Submitted Oct. 7, 1996.

Decided Oct. 17, 1996.

Rehearing and Suggestion for Rehearing
En Banc Denied Nov. 13, 1996.

252

Gary R. Allen, Acting Chief, Charles E. Brookhart, U.S. Department of Justice, Appellate Section, Tax Division, Washington, DC, Agnes Kempker–Cloyd, Assistant U.S. Attorney, Office of the U.S. Attorney for the Western District of Michigan, Grand Rapids, MI, Carol A. Barthel, Tax Division, Department of Justice (briefed), Washington, DC, for Plaintiff–Appellee.

Jeffrey A. Dickstein (briefed), Tulsa, OK, for Defendant–Appellant.

Before LIVELY, BOGGS and NORRIS, Circuit Judges.

LIVELY, Circuit Judge.

In this appeal from an adjudication of civil contempt, the defendant Leslie A. Grable claims the district court wrongfully denied his assertion of a Fifth Amendment privilege against compelled self-incrimination and his Sixth Amendment right to counsel. The parties waived oral argument, and the case was submitted on the briefs and district court record. We expedited submission of the appeal and now reverse the judgment of the district court.

I.

After determining that Leslie A. Grable did not file federal income tax returns for 1992 and 1993, the IRS served a summons upon him on August 8, 1994, pursuant to 26 U.S.C. § 7602. The summons ordered Grable to appear before an IRS officer and to produce records pertinent to his tax liability

for 1992 and 1993. The taxpayer failed to appear on the appointed date, and the United States petitioned to enforce the summons on November 16, 1994. On December 29, 1994, the United States District Court for the Western District of Michigan, pursuant to 26 U.S.C. §§ 7402(b) and 7604(a), entered an order directing the taxpayer to show cause why he should not be compelled to obey the IRS summons.

A magistrate judge conducted a show cause hearing on February 22, 1995, which the taxpayer also failed to attend. The following day, the magistrate judge filed a report which recommended that the district court enter an order directing the taxpayer to comply with the summons. On April 5, 1995, the district court, over certain objections interposed by Grable, entered such an order.

Further procedural maneuvering and delay occupied the balance of 1995, and on January 5, 1996, the United States filed its petition for a contempt hearing. On January 17, 1996, the district court directed Grable to show cause why he should not be held in contempt and set a hearing for February 8, 1996.

One week later, on January 24, 1996, an assistant U.S. attorney wrote Grable a letter encouraging him to produce the sought-after documents so that the contempt hearing could be avoided. On the eve of the contempt hearing Grable and attorney J. Thomas Schaeffer did, in fact, meet with Revenue Agent Carpenter pursuant to this invitation. Grable appeared at the designated IRS office and asserted a general Fifth Amendment objection to producing the documents enumerated in the administrative summons. Later, at the contempt hearing, Grable testified that he then asked Ms. Carpenter if there were any further questions and that she replied in the negative. The government does not dispute this statement.

At the February 8, 1996, contempt hearing, taxpayer Grable appeared without counsel and asserted both Fifth and Sixth Amendment objections to the hearing. In response to Grable's attempt to assert the Fifth Amendment "act of production" privilege, the District Judge advised him that no

Fifth Amendment privilege applies to an order from the IRS to provide tax information. The court also denied that the defendant had any Sixth Amendment right to be provided with counsel. Grable did not file an affidavit of indigency or otherwise seek to qualify for appointed counsel.

At the conclusion of the contempt hearing, the district court ordered the defendant to custody, where he remains. Both the district court and a panel of this court denied applications for stay of the contempt order pending appeal.

## II.

■■■ This court reviews a district court's civil contempt order for abuse of discretion. *Peppers v. Barry,* 873 F.2d 967, 968 (6th Cir.1989). The defendant's Fifth and Sixth Amendment contentions raise mixed questions of law and fact. Thus, factual determinations are reviewed for clear error, and the application of law to those facts is reviewed *de novo. United States v. Medlin,* 986 F.2d 463, 466 (11th Cir.), *cert. denied,* 510 U.S. 933, 114 S.Ct. 347, 126 L.Ed.2d 311 (1993).

### A.

We discuss the Fifth Amendment issue first.

In resisting the administrative summons, the defendant relies on the "act of production" privilege recognized by *United States v. Doe,* 465 U.S. 605, 612–13, 104 S.Ct. 1237, 1242, 79 L.Ed.2d 552 (1984). In *Doe,* the Supreme Court held that while the Fifth Amendment privilege against self-incrimination does not extend to corporate documents, personal documents do merit at least partial protection. In particular, while the *contents* of personal records are not privileged, the physical act of producing the documents may be privileged. *Id.* This distinction rests on the observation that "[a] government subpoena compels the holder of the document to perform an act that may have testimonial aspects and an incriminating effect." *Id.*

At his contempt hearing and now on appeal, the defendant has argued that, pursuant to *Doe* and its progeny, he cannot be

compelled to produce personal tax records that may incriminate him. Further, he claims that his present incarceration for failing to produce the documents enumerated in the IRS summons amounts to an unconstitutional penalty, as it burdens the exercise of a constitutional right.

The transcript of the February 8, 1996, contempt hearing indicates that the district court refused to recognize that the defendant had any Fifth Amendment privilege at all. After the court in effect refused to entertain his "act of production" privilege argument, the defendant inquired: "Do I understand that I do not have a fifth amendment right at all in this case?" The district court replied: "Yes, sir, that is basically what I am saying." Moments later, the court elaborated: "There is no fifth amendment right not to share information with the Internal Revenue Service, period. That is the law." The court arrived at these conclusions of law without seriously considering the defendant's argument and without conducting an *in camera* review of the relevant documents to determine whether, and to what extent, those documents might be incriminating.

### B.

On appeal, the government does not attempt to defend the district court's analysis of the Fifth Amendment privilege. Instead, the United States puts forward five reasons for its contention that the defendant does not have any "act of production" privilege in this particular case: (1) the defendant was barred from asserting the privilege at the contempt hearing because he did not assert it at the earlier enforcement hearing; (2) the defendant failed to assert the privilege in the proper manner; (3) the defendant has not established that he faces a serious possibility of criminal prosecution; (4) the defendant has not established that the records sought are personal (as opposed to corporate) and thus entitled to Fifth Amendment protection; and (5) the defendant waived the privilege by his testimony in an earlier corporate bankruptcy proceeding, *In re Grable & Sons Metal Products, Inc.*, Case No. GL94–80780 (Bankr.W.D.Mich.).

We address these arguments in the order presented.

### 1.

■ The government first contends that because the defendant did not assert his "act of production" privilege at the enforcement hearing (which he neglected to attend), he was consequently precluded from asserting it at the later contempt hearing. In support of this argument, the government relies on *United States v. Rylander*, 460 U.S. 752, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983), in which the Supreme Court prohibited a taxpayer from raising at a civil contempt hearing, for the first time, a defense of lack of possession and control of the corporate documents sought by an IRS summons.

The Courts of Appeals for the Fourth and Ninth Circuits appear to have rejected similar arguments. See *United States v. Sharp*, 920 F.2d 1167, 1170 (4th Cir.1990) (*Rylander* does not require barring a taxpayer from relying on the Fifth Amendment at a contempt hearing because he failed to assert the privilege "in a technically proper form while unrepresented by counsel."); *United States v. Rendahl*, 746 F.2d 553, 555 (9th Cir.1984) (A defendant is not barred from claiming a Fifth Amendment privilege at a contempt hearing because of his failure to raise the claim at an enforcement hearing.); *United States v. Drollinger*, 80 F.3d 389 (9th Cir. 1996) (same).

The government's position is based either on a claim of waiver or res judicata resulting from the taxpayer's failure to claim the privilege at the enforcement hearing. Viewed either way, we cannot resolve the question from the record made in the district court. Upon remand the district court will make a determination, following such proceedings as it finds necessary, as to whether any earlier act (or failure to act) of Grable's barred him from claiming the privilege at the contempt hearing. In this regard, we note that the ruling in *Sharp* appears to have been based, in part at least, on the fact that the taxpayer was unrepresented by counsel and thus presented the defense in a form that was not technically proper. We agree that this is an important factor in determining whether a

party has forfeited a constitutional privilege. It is not clear from the record before us that Grable was not represented by counsel when he failed to appear for the enforcement proceeding or the show cause hearing before the magistrate.

### 2.

■ The government objects to the manner as well as the timing of the defendant's assertion of the Fifth Amendment privilege. In its brief, the government argues that the defendant has made, at most, a "blanket assertion" of privilege rather than the "question-by-question" or "document-by-document" assertion required in civil tax enforcement proceedings. See *United States v. Hatchett*, 862 F.2d 1249, 1251 (6th Cir.1988); *United States v. Allee*, 888 F.2d 208, 212 (1st Cir.1989). The problem is that the defendant has never been asked specific questions about specific documents. The closest such interrogation occurred on February 7, 1996—the day before the contempt hearing—when the defendant and an attorney met with Revenue Officer Carpenter at an IRS office. At the beginning of that (apparently short) meeting, the taxpayer did raise what could be characterized as a blanket assertion of privilege. As noted, however, the defendant states without contradiction that he then asked Ms. Carpenter whether there were any further questions and that she replied in the negative. Because the district court did not conduct an *in camera* review of the documents at the contempt hearing, the February 7 meeting is the only place a "question-by-question" or "document-by-document" objection might have been made, and the government asked no questions of the kind that would elicit such objections.

■ If he produced the documents listed in the summons, a taxpayer such as Grable would be establishing their existence and authenticity as well as verifying his possession of them. *Doe v. United States*, 487 U.S. 201, 209, 108 S.Ct. 2341, 2346–47, 101 L.Ed.2d 184 (1988). This act of production "would be sufficiently testimonial and incriminating to activate [Grable's] fifth amendment privilege." *United States v. Argomaniz*, 925 F.2d 1349, 1356 (11th Cir.1991). Because

Grable could not respond to questions he was not asked, the effect of the interview was as if Ms. Carpenter had asked "all relevant questions and for each document listed in the summons, and [Grable] had responded by repeatedly raising his fifth amendment privilege in response." *Id.* In light of what occurred, and did not occur, at the February 7 meeting, we will not treat Grable's objection as a blanket claim of privilege.

### 3.

■ The existence of "substantial and real hazards of self-incrimination" is a prerequisite to the proper assertion of the "act of production" privilege. *Argomaniz*, 925 F.2d at 1353 (quoting *United States v. Reis*, 765 F.2d 1094, 1096 (11th Cir.1985)). The prospect of criminal prosecution, that is, must be more than "merely trifling or imaginary." *Marchetti v. United States*, 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968). The government argues that Grable has not established that there was a substantial prospect of criminal prosecution. Ms. Carpenter was conducting a civil tax investigation, and the IRS had not referred the matter to the Department of Justice for criminal prosecution. Nevertheless, Grable was being investigated for failure to file federal income tax returns for two years. Willful failure to file an income tax return is a crime under 26 U.S.C. § 7203. Thus, the prospect of a criminal prosecution and punishment appears to have been real and substantial, not "merely trifling or imaginary." At any rate, the district court, not the parties, is ultimately responsible for determining whether the defendant faces a "substantial and real" threat of criminal prosecution. *Argomaniz*, 925 F.2d at 1355.

The defendant argues that the district court should have conducted an *in camera* review of the relevant documents to make this determination. In response, the government points out that the defendant did not request such a hearing and may not even have brought the relevant documents to the contempt hearing for the court's review. It is nevertheless apparent that the district court did not make an informed determination, *in camera* or otherwise, as to whether

the relevant documents are incriminating. In undertaking this obligation on remand, the district court should be guided by the Supreme Court's directive that the Fifth Amendment privilege "not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951); see also *Sharp,* 920 F.2d at 1170–71 (outlining the requisite inquiry that a district court should make in reviewing documents sought by the IRS).

### 4.

■ In support of the district court's contempt order, the government argues that "it appears that most of the records responsive to the summons are corporate records from taxpayer's business, the source of his personal income." If this were true, then clearly the defendant could assert no privilege at least as to the corporate documents, for corporate documents do not come within the scope of the Fifth Amendment privilege. *Doe,* 465 U.S. at 608, 104 S.Ct. at 1240 (discussing *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)). The government, however, fails to establish how it is apparent that the records sought by the IRS are corporate rather than personal in nature. The boilerplate IRS summons served upon the defendant—as an individual, not as a corporate officer—calls for the production of, among numerous other items, Forms W–2 (wages) and 1099 (interest and dividend income). These are quintessentially personal documents, the production of which by a taxpayer may be protected by the Fifth Amendment privilege. *Smith v. Richert,* 35 F.3d 300, 304 (7th Cir.1994).

■ Nothing in the record supports the district court's statement that the summons sought "business records." On its face, the summons seeks only personal records of Grable for the two years in question. Furthermore, the court never reviewed whatever documents the defendant may possess. Without examining the documents the dis-

trict court had no basis for its statement. To the extent this is a finding of fact, it is clearly erroneous. Of course, if an *in camera* review on remand reveals that the records sought are corporate rather than individual records, Grable will not be entitled to the privilege claimed against the act of production. But the court's original characterization of them as "business records" and "corporate documents" is not dispositive of the matter. No proper finding of fact supports the lower court's conclusion that the defendant has only corporate records in his possession.

### 5.

■ The government's fifth major objection to the defendant's claim of privilege is that the defendant waived whatever privilege he might have by testifying at an earlier corporate bankruptcy proceeding, *In re Grable & Sons Metal Products, Inc.,* Case No. GL94–80780 (Bankr.W.D.Mich.). The waiver issue was not argued at the contempt hearing, but the district court, in its subsequent opinion, sided with the government on this point:

> [T]he asserted privilege was clearly waived by the Respondent [Grable] in previous bankruptcy proceedings and by his failure to raise the issue at the enforcement hearing. At such bankruptcy hearings, Grable admitted that he on behalf of his corporation maintained business records relating to his personal income and testified that he estimated that his personal income for 1993 was between 35,000–40,000 dollars.

During these bankruptcy proceedings, the defendant testified about the corporate records and other affairs of his business. The scope of his testimony was much narrower than the information now sought by the IRS. Because this testimony related to corporate documents, the defendant had no "act of production" privilege to assert in the first place. *Doe,* 465 U.S. at 608, 104 S.Ct. at 1240. Therefore, as the defendant argues, because he could not legally invoke the "act of production" privilege at the hearing concerning the corporation's bankruptcy, he could not have waived it.

## III.

### A.

Given the course of proceedings in the district court, this court is unable to rule definitively on all of the issues raised by this appeal.

Grable's failure to respond to the show cause order entered by the district court on December 29, 1994, and his failure to attend the show cause hearing on February 22, 1995, should have prompted a contempt hearing without further delay. Instead, the IRS permitted Grable to delay further proceedings and appears to have been exceedingly uninterested in bringing the matter to conclusion.

This much, at least, is clear: when Grable appeared at the contempt proceeding, the district court should have conducted an inquiry to determine the validity of his claim of privilege rather than mistakenly advising Grable that no Fifth Amendment privilege against compulsory self-incrimination existed. The court could have required him to identify the basis for his Fifth Amendment claim by asking the right questions rather than refusing to consider the claim at all. As we stated in *In re Morganroth,* 718 F.2d 161, 167 (6th Cir.1983): "It is for the court to decide whether a witness' silence is justified and to require him to answer if it clearly appears to the court that the witness asserting the privilege is mistaken as to its validity." The *Morganroth* court went on to indicate that the court must permit the witness to assert the privilege "with respect to particular questions, and in each instance, the court must determine the propriety of the refusal to testify." *Id.*

 These requirements are equally applicable to a contempt hearing where the person asserting the privilege is a party rather than a witness and the cause of the hearing is the party's refusal to produce documents. If the party asserts a general claim of Fifth Amendment privilege, the court must advise that the privilege can apply only on a document-by-document basis. If the party's claim is for an "act of production" privilege, the court should then order the party to produce the documents, not to the agency that summoned them, but to the court for an *in camera* inspection. If the party refuses to produce the documents at this point, he or she will have waived the claimed privilege. If the party produces the documents to the court in an *in camera* proceeding, however, the court must give the party an opportunity to assert the claim of privilege as to each document, and must then rule on the validity of the claim as to each. A failure to turn over to the IRS any document as to which the court finds no valid claim of privilege will support a finding of contempt. As to any documents for which the court finds a valid claim of privilege, the party will be required to produce the documents only if granted use immunity.

### B.

If, under the circumstances disclosed by the proceedings on remand, the district court finds that Grable's refusal to attend court proceedings after receiving sufficient notice deprived him of the right to rely on the privilege now asserted, the finding of contempt may stand. It was clear error and an abuse of discretion, however, for the district court to advise Grable that a taxpayer has no Fifth Amendment privilege when required by the IRS to produce documents that may be incriminating.

Upon remand, unless the district court finds that Grable has lost the right to rely on the claimed privilege by reason of his conduct, it will give Grable an opportunity to produce the summonsed documents to the court for *in camera* inspection. If Grable refuses to produce them for this purpose, the court may find him in contempt and re-incarcerate him. If Grable complies with the order, the district court will determine, from its *in camera* inspection, what documents, if any, Grable may withhold from production on the basis of the Fifth Amendment claim. The court may require production of privileged documents only upon granting use immunity.

### IV.

 The defendant's second argument requires little discussion. He had appeared

at the IRS office the day before the contempt hearing with an attorney. The attorney did not accompany him to the contempt hearing, and Grable attempted to avoid the hearing by arguing that he was entitled to legal representation. Although some of the colloquy between the District Judge and Grable was confusing, in the final analysis the court correctly informed him that he was not entitled to a court-appointed attorney. He had made no claim of indigency, and he did not ask for a continuance in order to bring his attorney of the previous day, Mr. Schaeffer, to the hearing. The district court's finding that Grable had not established indigency was not clearly erroneous. The court did not violate the Sixth Amendment right to counsel by proceeding with the contempt hearing under these circumstances.

## CONCLUSION

The judgment of the district court is **REVERSED** and the case is **REMANDED** to the district court for further proceedings consistent with this opinion. The mandate will issue forthwith, and Grable will be released from incarceration immediately. The district court will conduct the proceedings on remand as expeditiously as possible.