# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-2623

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| Danny L. Norwood, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: March 18, 2005
Filed: August 26, 2005

———————

Before WOLLMAN, JOHN R. GIBSON, and COLLOTON, Circuit Judges.

———————

COLLOTON, Circuit Judge.

Danny L. Norwood appeals from an order enforcing an Internal Revenue Service ("IRS") summons pursuant to 26 U.S.C. §§ 7602 and 7604. The district court[1] determined that the summons, which sought various financial records in connection with the IRS's investigation of Norwood's possible underreporting of income, was properly issued and did not violate Norwood's Fourth or Fifth Amendment rights. We affirm.

---

[1]The Honorable Ralph R. Erickson, United States District Judge for the District of North Dakota.

I.

On December 9, 2002, the IRS summoned Norwood in connection with an audit of his 1999 and 2000 federal income tax returns. In paragraphs 1, 3, 5, and a final unnumbered paragraph, the summons requested bank records for accounts over which Norwood had authority during 1999 and 2000, records reflecting his purchase or redemption of certificates of deposit during 1999 and 2000, documents relating to credit, debit, or charge card accounts that Norwood controlled from 1999 and 2000, and documents evincing Norwood's ownership interest in any foreign entities. (Appellant's App. at 39-40).

Norwood appeared before an IRS agent in response to the summons on January 8, 2003, but refused to produce the information requested by the summons. Norwood invoked his Fifth Amendment privilege against self-incrimination in response to the portions of the summons in question.

On January 13, 2003, the IRS announced the Offshore Voluntary Compliance Initiative ("OVCI"). The program was designed to bring taxpayers who had used offshore accounts to hide income into compliance with federal tax law while gathering information about the promoters of such offshore schemes. Taxpayers who voluntarily disclosed their use of offshore accounts prior to April 15, 2003, would be exempted from civil fraud and information return penalties, but would still be required to pay back taxes, interest, and certain accuracy and delinquency penalties. Rev. Proc. 2003-11, 2003-1 C.B. 311, § 2.01. Taxpayers already under audit when OVCI began were ineligible for participation in the program. *Id*. § 4.01(1)(a).

On March 12, 2003, the government petitioned the district court for enforcement of its summons to Norwood and an order instructing him to execute a consent directive authorizing any financial institution at which Norwood had an account to release information relating to the account. The government's petition was

-2-

accompanied by two affidavits, one from Revenue Agent Mark Ensrud and one from Revenue Agent Joseph West. Agent Ensrud declared that his investigation of Norwood's tax returns was prompted by information garnered through OVCI. He stated that the OVCI information revealed that Norwood had two MasterCard payment cards issued by Leadenhall Bank & Trust Company ("Leadenhall"), located in Nassau, The Bahamas. Ensrud disclosed the account numbers corresponding to the cards, and claimed that Norwood had "checked 'no' in response to the question whether he had an interest in or a signature or other authority over a financial account in a foreign country" on his 1999 and 2000 federal income tax returns. Ensrud also declared that he had obtained receipts and information from a furniture company in Fargo, North Dakota, indicating that Norwood had used his Leadenhall cards there in 2000 to purchase furniture that was delivered to his home address.

Agent West's declaration described how the IRS obtained account information on the Leadenhall payment cards by means of a "John Doe" summons served on MasterCard International and American Express Travel Related Services Company. West described a "typical offshore scheme" and concluded that taxpayers having signature authority over offshore credit cards such as those issued by Leadenhall "may be evading the payment of federal taxes by concealing unreported taxable income or claiming improper deductions as a result of maintaining diverted funds in offshore accounts."

After a hearing on an order to show cause on May 11, 2003, the district court issued a memorandum opinion and order on March 31, 2004, which it amended in an order issued August 16, 2004. The district court ruled that the IRS had made a prima facie case for enforcement of the summons, and that Norwood had not shown that the summons was issued for an improper purpose. The court also determined that the summons did not violate Norwood's Fourth or Fifth Amendment rights, and denied Norwood's request for discovery. The court ordered Norwood to comply with

paragraphs 1, 3, 5, and the final paragraph of the summons. The court also ordered Norwood to execute a consent directive for the years 1999 and 2000.

## II.

Norwood challenges two aspects of the district court's decision. First, he contends that the district court erred in enforcing the summons. He asserts this was error because the IRS had no legitimate purpose in seeking the information requested by the summons, enforcement of the summons would violate his Fifth Amendment right against self-incrimination, and the summons was unreasonably broad in violation of the Fourth Amendment. Second, he contends that the district court should have granted him discovery regarding the IRS's institutional posture in the investigation, that is, whether the IRS issued the summons for the purpose of developing criminal charges against Norwood.

## A.

## 1.

The district court's finding that the IRS had a legitimate purpose for summoning Norwood is not clearly erroneous. *See United States v. Kaiser*, 397 F.3d 641, 643 (8th Cir. 2005) (standard of review). Section 7602 of Title 26 authorizes the IRS to summon certain persons and data "[f]or the purpose of . . . determining the liability of any person for any internal revenue tax." Federal district courts have jurisdiction to enforce such a summons pursuant to 26 U.S.C. § 7604. Enforcement of a summons under § 7604 is appropriate where the record shows that "the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed." *United States v. Powell*, 379 U.S. 48, 57-58 (1964). The

-4-

Commissioner may establish a prima facie case for enforcement of a summons by a "minimal showing of good faith compliance with summons requirements." *United States v. Moon*, 616 F.2d 1043, 1046 (8th Cir. 1980). Such good faith can be demonstrated by the affidavit of an IRS agent. *Id*.

Here, Agent Ensrud's declaration stated that the materials requested in the summons were necessary to "properly investigate Mr. Norwood's federal tax liabilities for the 1999 and 2000 tax years," (Ensrud Decl. ¶ 15), and that the "IRS is seeking to determine the correctness" of Norwood's tax returns from those years. *(Id.* ¶ 3). The declaration also noted Norwood's maintenance of two Leadenhall-issued payment cards, (*id*. ¶¶ 5-6), and stated that "[n]o Department of Justice referral, as defined in Code Section 7602(d), is in effect to Mr. Norwood for the years under investigation." (*Id*. ¶ 16). Agent West's declaration asserted that taxpayers having signature authority over offshore credit cards such as those issued by Leadenhall "may be evading the payment of federal taxes by concealing unreported taxable income or claiming improper deductions as a result of maintaining diverted funds in offshore accounts." (*Id*. ¶ 4). In light of these affidavits, we agree with the district court that the government established a proper purpose for the summons under the *Powell* standard.

The taxpayer can rebut a prima facie case for enforcement under *Powell* by demonstrating that the *Powell* requirements have not been satisfied, or by showing that enforcement of the summons would represent an abuse of the court's enforcement powers. *Moon*, 616 F.2d at 1046. The burden of proof on the taxpayer necessary to overcome a prima facie showing of proper purpose is a heavy one, *Kaiser*, 397 F.3d at 643, because only "substantial countervailing policies" or express statutory prohibition should stand in the way of effective performance of "congressionally imposed responsibilities to enforce the tax Code." *United States v. Euge*, 444 U.S. 707, 711 (1980); *accord Robert v. United States*, 364 F.3d 988, 996 (8th Cir. 2004). Norwood points to the IRS's policy of criminally prosecuting

taxpayers who have used offshore accounts to conceal income, and suggests that the summons was issued in an attempt to gather information for a criminal prosecution. Such a purpose for issuing the summons, Norwood argues, would be an improper purpose under *Powell*.

In contending that the policy of the IRS is relevant in determining the propriety of the agency's purpose in issuing a summons, Norwood relies on *United States v. LaSalle National Bank*, 437 U.S. 298 (1978). *LaSalle* announced a rule that bad faith under § 7602 was shown when the IRS's purpose in issuing a summons was solely to investigate criminal activity. *Id*. at 316. Five years after *LaSalle* was decided, Congress amended § 7602 by adding two new provisions. The first amendment addressed the purposes for which a summons may be issued:

> Purpose May Include Inquiry Into Offense. The purposes for which the Secretary may [issue a summons] include the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws.

Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, § 333, 96 Stat. 324 (codified at 26 U.S.C. § 7602(b)). Our court has interpreted this amendment as "expand[ing] the purpose for which a summons may be issued," and as "eliminat[ing] the need to inquire into the institutional posture of the IRS." *United States v. Claes*, 747 F.2d 491, 496 (8th Cir. 1984). The second amendment imposed a limitation on the summons power:

> Limitation of Authority. No summons may be issued under this title, and the Secretary may not begin any action under section 7604 to enforce any summons, with respect to any person if a Justice Department referral is in effect with respect to such person.

Pub. L. No. 97-248, § 333 (codified at 26 U.S.C. § 7602(c)). We have interpreted these amendments together as clarifying that "[t]he IRS may issue a summons for a solely criminal purpose as long as the case has not been referred to the Department of Justice for criminal prosecution or grand jury investigation." *Claes*, 747 F.2d at 496. In this case, Agent Ensrud's declaration states, and Norwood does not dispute, that a referral to the Department of Justice has not occurred. The summons, therefore, complies with the amended version of § 7602 regardless whether its purpose is solely criminal.

Even under the rule of *LaSalle* that an IRS summons may not issue for "solely" a criminal investigative purpose, the summons in this case would not represent an abuse of the court's process, because the IRS had a non-criminal purpose in summoning Norwood. The requirement of good faith under § 7602 has never barred the IRS's use of summonses in aid of possible criminal prosecution where the agency also has a civil purpose. *See LaSalle*, 437 U.S. at 307-09. Documents in the record demonstrate that while the IRS reserves the right to prosecute persons found to have concealed income through the use of offshore accounts, the agency also intends to pursue civil measures against those who do not participate in OVCI. (J.A. at 65). The IRS states on its OVCI website that "taxpayers who choose not to [participate in the OVCI] will face the full range of penalties," including civil fraud penalties, interest, and penalties for failure to file relevant information returns, in addition to potential criminal penalties. (*Id.*)

It is not clear at this point, moreover, that Norwood would be subject to criminal penalties even if he had engaged in the conduct alleged by the IRS. Although the district court inferred that Norwood was "hiding taxable income by transferring funds to offshore jurisdictions," (Add. at 4), neither the IRS's petition nor the declarations of the agents allege that Norwood engaged in such activity. Norwood argues that the district court's conclusion that Norwood inaccurately checked "no" on his 1999 and 2000 tax returns when asked whether he had an interest

in or authority over a financial account in a foreign country was a finding that he had committed a "criminal offense." (Br. of Appellant at 25). Of course, it may be an offense knowingly to file a materially false tax return, but as the government points out, Norwood's non-disclosure of his interest in the Leadenhall accounts could be "due to mistake, reliance on professional advice, negligence or carelessness." (Br. of Appellee at 19).

Norwood argues that the IRS's noncompliance with its internal procedures is indicative of the agency's improper purpose. He notes that the Internal Revenue Manual ("IRM") requires that delinquent returns be referred to the criminal investigation division "if it is determined that there are firm indications of fraud," IRM § 4.19.1.9.1.3(6), and argues that his case presents such firm indications. According to the IRM, however, firm indications of fraud are present only where the IRS discovers "affirmative acts" of fraud, *id*. § 25.1.2.1(1), and an intent to defraud on the part of the taxpayer. *See id*. § 25.1.2.1(5). While Norwood's use of offshore credit card accounts and his refusal to provide requested records may be initial indicators of fraud, *see id*. § 25.1.2.2(6)(b), such indicators do not necessarily rise to the level of a firm indication of fraud. *Id*. § 25.1.2.1(1). The government has not alleged fraudulent intent on the part of Norwood, and Norwood has not shown that the IRS has failed to comply with its internal regulations. In sum, the district court's conclusion that the IRS issued the summons with a proper purpose is not clearly erroneous.

2.

Norwood argues that his Fifth Amendment privilege against self-incrimination would be violated by enforcement of the IRS summons. The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. This language has been interpreted to prohibit compelled production of evidence where the communicative aspects of such

production are testimonial and incriminating. *Fisher v. United States*, 425 U.S. 391, 408 (1976); *United States v. Teeple*, 286 F.3d 1047, 1049 (8th Cir. 2002).

The district court found that because the IRS already knew of the existence of the two Leadenhall cards and a corresponding account, the existence of the documents associated with the cards and account was a "foregone conclusion." The production of documents the existence of which is a foregone conclusion is not testimony for purposes of the Fifth Amendment. *Fisher*, 425 U.S. at 411. When the existence of documents is a foregone conclusion, the taxpayer's concession that he has the documents would add "little or nothing" to the government's information, and the "[t]he question is not of testimony but of surrender." *Id*. (internal quotation omitted). Whether the existence of documents is a foregone conclusion is a question of fact, subject to review for clear error. *United States v. Doe*, 465 U.S. 605, 613-14 (1984).

Norwood asserts that the summons did not specifically identify documents the existence of which was a foregone conclusion, and that it therefore fell short of the specificity required by *United States v. Hubbell*, 530 U.S. 27, 44-45 (2000). In *Hubbell*, the Court held that the existence of "general business and tax records" possessed by the defendant was not a foregone conclusion for Fifth Amendment purposes where the government could not show that "it had any prior knowledge of either the existence or the whereabouts" of the documents in question. *Id*. at 45. Here, Norwood does not dispute that the IRS has prior knowledge of two Leadenhall payment cards and one Leadenhall account controlled by him. He contends that the summons includes documents outside the IRS's prior knowledge, however, because the language of the summons is not restricted to Leadenhall cards and account. It is true that the summons as written is not restricted to records associated with Norwood's Leadenhall cards and account, but the government seeks enforcement of the summons only to the extent that the documents requested are a foregone conclusion. (Br. of Appellee at 10 n.2). The district court's memorandum, moreover,

relied on the government's knowledge of the Leadenhall cards and account as the basis for its decision that complying with the summons would not implicate the Fifth Amendment. We therefore interpret the district court's order to enforce the summons only to the extent the summoned records pertain to Norwood's Leadenhall cards and account.

The existence of the requested records relating to Norwood's Leadenhall cards and account is a foregone conclusion. The summons seeks records such as account applications, periodic account statements, and charge receipts, all of which are possessed by the owners of financial accounts as a matter of course. Norwood does not contend that he does not possess any of these documents, and the government knows far more about the documents associated with Norwood's Leadenhall cards and account than it did about the defendant's business records in *Hubbell*. 530 U.S. at 44. In *Hubbell*, the government could not show "*any* prior knowledge of either the existence or whereabouts" of the documents sought. *Id*. (emphasis added). Here, by contrast, the government knows the name and location of the bank that created the records sought, Norwood's payment card numbers, and even the details of a number of discrete transactions involving the cards and his Leadenhall account. Accordingly, the district court's conclusion that "Norwood's production of the records has no testimonial significance," (Add. at 4), is not clearly erroneous.

3.

Norwood also challenges the district court's enforcement of the summons as a violation of the Fourth Amendment's guarantee against unreasonable searches and seizures. He maintains that the summons constitutes an unreasonable search because it is overly broad. The Fourth Amendment's requirement of reasonableness in the context of the compelled production of documents is satisfied where the documents sought are relevant to a properly authorized inquiry, and where the "specification of the documents" is "adequate, but not excessive, for the purposes of the relevant

-10-

inquiry." *Okla. Press Pub. Co. v. Walling,* 327 U.S. 186, 209 (1946); *see* Wayne R. LaFave, *Search & Seizure*, § 4.13 (3d ed. 1996). Whether a summons is reasonable is a fact-specific inquiry, and "cannot be reduced to formula." *Walling*, 327 U.S. at 209.

Norwood argues that the IRS's summons requires him to "produce essentially every scrap of paper ever compiled in his business or personal affairs." (Br. of Appellant at 34). Norwood's characterization of the documents sought exaggerates the scope of the summons as enforced. As noted above, the district court enforced the summons only to the extent it requested records relating to the Leadenhall cards and account. (Add. at 4). These items are unlikely to be "every scrap of paper ever compiled" by Norwood in his business or personal affairs. In any case, "broadness alone is not sufficient justification to refuse enforcement of a subpoena so long as the material sought is relevant." *Adams v. FTC*, 296 F.2d 861, 867 (8th Cir. 1961). The same is true of a summons. The documents sought are relevant to the IRS's inquiry, and the summons therefore satisfies the requirements of the Fourth Amendment in this case.

B.

We also conclude that the district court did not abuse its discretion by determining that Norwood had not made the "substantial preliminary showing that enforcement of a summons would result in an abuse of the court's process" required to permit discovery. *Robert*, 364 F.3d at 999. An abuse of the court's process would occur "if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Powell*, 379 U.S. at 58. As discussed above, Norwood has shown no improper purpose on the part of the IRS. He does not contend that the summons was issued to harass or pressure him,

-11-

or assert any other sort of bad faith.  Because Norwood failed to make the required showing, the district court's denial of discovery was not an abuse of discretion.

*     *     *

The district court's order is affirmed.

_____