**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　*Petitioner-Appellee,*

　　　　　　v.

CHERIE J. BRIGHT; BENJAMIN
BRIGHT,
　　　　　　*Respondents-Appellants.*

No. 07-17027

D.C. No.
CV-07-00311-ACK

UNITED STATES OF AMERICA,
　　　　　　*Petitioner-Appellee,*

　　　　　　v.

CHERIE J. BRIGHT,
　　　　　　*Respondent-Appellant,*

　　　　　　and

BENJAMIN BRIGHT,
　　　　　　*Respondent.*

No. 08-16912

D.C. No.
1:07-cv-00311-
ACK-KSC

UNITED STATES OF AMERICA,
　　　　　　*Petitioner-Appellee,*

　　　　　　v.

BENJAMIN BRIGHT,
　　　　　　*Respondent-Appellant,*

　　　　　　and

CHERIE J. BRIGHT,
　　　　　　*Respondent.*

No. 08-16913

D.C. No.
1:07-cv-00311-
ACK-KSC

OPINION

3133

Appeal from the United States District Court
for the District of Hawaii
Alan C. Kay, District Judge, Presiding

Argued and Submitted
October 15, 2009—Honolulu, Hawaii

Filed February 26, 2010

Before: Robert R. Beezer, Susan P. Graber and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Fisher

## COUNSEL

Christopher J. Cannon (argued), Suzanne M. Morris, San Francisco, California, Michael Jay Green, Honolulu, Hawaii, for the respondents-appellants.

Carol A. Barthel (argued), Robert W. Metzler, John A. Dudeck, Jr. and David I. Pincus, Tax Division, Department of Justice, John Dicicco, Acting Assistant Attorney General, Gilbert S. Rothenberg, Acting Deputy Assistant Attorney General,

Richard T. Morrison, Deputy Assistant Attorney General, Nathan J. Hochman, Assistant Attorney General, Washington, D.C., and Edward Kubo, Jr., United States Attorney, Honolulu, Hawaii, for the petitioner-appellee.

## OPINION

FISHER, Circuit Judge:

The Fifth Amendment protects individuals from having to disclose documents when the very act of production would constitute self-incrimination. Cherie and Benjamin Bright (the Brights), subjects of an Internal Revenue Service investigation concerning past tax liability, jointly appeal the district court's order enforcing IRS summonses requiring production of documents, including those relating to offshore accounts. The Brights invoked their Fifth Amendment privilege and refused production. They also separately appeal the district court's subsequent order finding them in contempt for failing to produce the documents. We hold that the district court acted properly in enforcing the IRS summonses and finding the Brights in contempt, although we modify the conditions necessary to purge the contempt.

## BACKGROUND

Cherie Bright is a co-owner of Bright Enterprises, a tax consulting business. In 2007, the Department of Justice filed a civil fraud action against Bright Enterprises and its owners, accusing them of promoting tax shelters. Before bringing that action, the IRS investigated Cherie and her business partner's personal returns, seeking information concerning the same shelters that would appear in the fraud complaint. Specific to this appeal, on June 19, 2006, the IRS issued and served identical summonses to Cherie and her husband, Benjamin Bright, directing them to appear before an IRS Revenue Agent to

address suspected past tax liability. The summonses also directed the Brights to bring numerous categories of documents — including records relating to two credit cards identified with the Brights that were linked to offshore accounts and "any other offshore credit cards." The Brights failed to appear or to produce any documents.

The government then filed an enforcement petition in the United States District Court for the District of Hawaii, which ordered the Brights to show cause why they should not be compelled to comply with the summonses. The Brights appeared and each asserted an "intention to evoke all rights afforded to" them, including the Fifth Amendment right against self-incrimination. The district court granted the IRS's petition on September 11, 2007, ruling that the Brights' privilege claim failed because they had not specified which portions of the summonses requested privileged documents or what facts supported a privilege claim. The court specifically found that

> [t]he IRS knows the name and location of the [offshore] banks, the credit card numbers, and that the [Brights] used and maintained these cards. Thus the existence of the offshore credit card accounts is a foregone conclusion, and the production of the records relating to these credit card accounts has no testimonial significance.

After denying the Brights' motion for reconsideration, the district court entered an enforcement order (the enforcement order), and the Brights jointly and timely appealed.

The IRS then established a new schedule for the production of documents. On the day the documents were due, however, the Brights unsuccessfully moved for a stay in the district court. This court also denied a stay.

The Brights finally began producing documents, but none concerning offshore accounts or many other categories of

documents. This refusal prompted the government to seek a contempt order from the district court. Meanwhile, the Brights continued to produce some documents. They also submitted declarations outlining their attempts at compliance with the document requests and their purported lack of possession or control of any relevant documents not yet produced.

After affording the Brights additional time to finish production, the district court instituted contempt proceedings. Rather than produce documents related to offshore accounts, Cherie reasserted her Fifth Amendment privilege, and Benjamin contended that he had produced all documents in his possession or control. Cherie eventually filed a substantial declaration detailing compliance — with the exception of offshore accounts — and Benjamin's lack of involvement in the family finances or "in any of the activities" that were the subjects of the specific document requests.

In an August 20, 2008 order (the contempt order), the district court found both Cherie and Benjamin Bright in contempt of the enforcement order, making five key findings and conclusions:

1. The Fifth Amendment privilege could not be relitigated in contempt proceedings.

2. The enforcement order's requirement that the Brights produce documents related to "any other offshore credit cards" mandated production of documents concerning two additional offshore accounts not specifically named in the summonses, even though the government did not discover the connection between these accounts and the Brights until after entry of the enforcement order. However, the failure to produce these particular documents was not necessary to the finding of contempt.

3. The government had established that other documents remained outstanding.

4. The Brights were not in substantial compliance because they had engaged in extensive delaying tactics and had failed to argue during the enforcement proceeding that relevant documents were not in their possession or control.

5. The Brights had failed to provide evidence establishing that Benjamin did not have custody or control of the requested documents.

The court imposed a $500 daily fine until the Brights "either fully comply with the summonses or sufficiently establish that they are unable to do so," as well as a $11,593.59 compensatory sanction. The court further noted that "[a] satisfactory response would include a more definitive declaration by [the Brights] that documents do not exist, or documentation showing that despite making all reasonable efforts to comply, they have a present inability to do so." Benjamin and Cherie Bright separately and timely appealed the order of contempt.

## JURISDICTION

The United States brought its petition under 26 U.S.C. § 7604(b), and the district court had jurisdiction under 26 U.S.C. § 7604(a). The Brights' appeals have been consolidated pursuant to Federal Rule of Appellate Procedure 3(b)(2), and we review under 28 U.S.C. § 1291.

## DISCUSSION

### I.  Entry of the Enforcement Order

The Brights first assert that the district court erred in granting the enforcement order. They advance two parallel contentions. As a matter of procedure, they argue that the district

court erred by issuing a "blanket denial" of their assertion of a Fifth Amendment privilege as to the production of all responsive documents. As a matter of substance, they argue that the district court erred by finding that the production of records concerning offshore bank accounts had no testimonial significance, foreclosing a privilege claim.

We review de novo a district court's application of the Fifth Amendment privilege against self-incrimination. *See United States v. Chase*, 340 F.3d 978, 981 (9th Cir. 2003) (privileges generally); *United States v. Rubio-Topete*, 999 F.2d 1334, 1338 (9th Cir. 1993) (Fifth Amendment). Whether the existence of documents is a foregone conclusion is a question of fact, which we review for clear error. *United States v. Norwood*, 420 F.3d 888, 895 (8th Cir. 2005) (citing *United States v. Doe*, 465 U.S. 605, 613-14 (1984)). We affirm, although we narrow the scope of the enforcement order to encompass only records whose existence was known to the government at the time the IRS issued the summonses.

## A.  Procedure:  Applying  Privilege  to  Document Requests

**[1]** "A claim of Fifth Amendment privilege may be asserted if there are 'substantial hazards of self-incrimination that are real and appreciable, not merely imaginary and unsubstantial,' that information sought in an IRS summons might be used to establish criminal liability." *United States v. Drollinger*, 80 F.3d 389, 392 (9th Cir. 1996) (per curiam) (quoting *United States v. Rendahl*, 746 F.2d 553, 555 (9th Cir. 1984). " '[A] proper application of this standard requires that the Fifth Amendment be raised in response to specific questions propounded by the investigating body.' " *Id.* (quoting *United States v. Pierce*, 561 F.2d 735, 741 (9th Cir. 1977)); *accord United States v. Bodwell*, 66 F.3d 1000, 1001 (9th Cir. 1995) (per curiam). The privilege is not limited to oral questioning; an individual may refuse to provide documents to an investigative body if the act of production would be testimo-

nial. *See, e.g.*, *In re Grand Jury Subpoena, Dated April 18, 2003*, 383 F.3d 905, 909 (9th Cir. 2004). The taxpayer bears the burden of showing that testimony or documents are privileged. *See United States v. Brown*, 918 F.2d 82, 84 (9th Cir. 1990) (per curiam).

The Brights were able to litigate fully their asserted Fifth Amendment privilege concerning document production in the enforcement proceeding. The magistrate judge scheduled a hearing over a month after the government filed its enforcement petition, setting a clear and reasonable deadline for submission of briefs and documents in support of a privilege claim. The hearing occurred over a year after the IRS issued summonses to the Brights, allowing the Brights more than sufficient time to search for responsive documents. Before the hearing, the Brights submitted both opposition papers and a surreply. The Brights' contention that the district court addressed the privilege prematurely is not well taken.

**[2]** Moreover, the scope of the Brights' privilege claim was clear: it applied to all documents responsive to each category and subcategory specified in the summonses. Had the Brights wished to narrow their privilege claim or provide targeted support concerning particular documents, they had the opportunity to produce a privilege log or turn over any contested documents for in camera review. "*[I]n camera* review does not destroy the privileged nature of . . . contested communications . . . ." *United States v. Zolin*, 491 U.S. 554, 569 (1989). In the absence of such targeted support, the district court was not precluded from making a reasoned assessment of the claimed privilege with respect to each category of requested documents. *See Brown*, 918 F.2d at 84.

**[3]** The application of privilege to a document production is different from a blanket privilege claim at an interview. An unscripted interview is undefined, so a court cannot make a reasoned assessment of privilege before particular questions have been posed. *See, e.g.*, *Drollinger*, 80 F.3d at 392. In con-

trast, a document request lays out categories of documents requested.[1] A claim of privilege over *all* documents can be assessed as repeated assertions of privilege in response to each category. *See United States v. Grable*, 98 F.3d 251, 255 (6th Cir. 1996) ("[T]he effect . . . was as if [the revenue agent] had asked . . . 'for each document listed in the summons, and [the taxpayer] had responded by repeatedly raising his fifth amendment privilege in response.' " (quoting *United States v. Argomaniz*, 925 F.2d 1349, 1356 (11th Cir. 1991)). The scope of the assertion is clear and circumscribed. Thus, although in the context of oral questioning a taxpayer has not fully litigated the privilege by issuing a general claim of privilege, *Drollinger*, 80 F.3d at 392-93; *Rendahl*, 746 F.2d at 555, the same cannot be said of a claim of privilege over documents.[2]

[4] The district court gave the Brights an opportunity to present evidence concerning issues such as privilege, possession and control at a hearing before a magistrate judge. A taxpayer cannot refuse to produce a privilege log or documents for in camera review in response to an order to show cause and then protest an insufficient opportunity to present a claim of privilege. *See United States v. W.R. Grace*, 526 F.3d 499, 515 (9th Cir. 2008) (en banc) (holding that a party's "discretion to investigate and present its case does not override the district court's authority to manage the trial proceedings —

---

[1]Examples in this case include "Applications for insurance" concerning "Asia Pacific Mutual Insurance Company, Ltd." and "All records of sales transactions" "with respect to the Exotic Bird Business." The merit of privilege claims is a separate question. As discussed below, when categories are excessively broad it becomes difficult for the government to prove the foregone conclusion exception to an act of production privilege claim.

[2]The taxpayer in *Grable* had not fully litigated the privilege because he raised privilege concerns only before the revenue agent. 98 F.3d at 253. When the taxpayer raised Fifth Amendment concerns to the district judge for the first time during contempt proceedings, the judge replied, "There is no [F]ifth [A]mendment right not to share information with the Internal Revenue Service, period." *Id.* at 254. The Sixth Circuit remanded for proper consideration of the privilege. *Id.* at 258.

including by setting discovery and disclosure deadlines"). Such dilatory tactics would undermine efficient tax enforcement, which appears to have been the Brights' goal.

## B. Substance: Fifth Amendment Privilege

**[5]** "The Fifth Amendment grants persons the privilege not to 'provide the State with [self-incriminatory] evidence of a testimonial or communicative nature.' " *United States v. Rodriguez-Rodriguez*, 441 F.3d 767, 772 (9th Cir. 2006) (quoting *Schmerber v. California*, 384 U.S. 757, 761 (1966)).

> The act of producing evidence in response to a subpoena . . . has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena.

*Fisher v. United States*, 425 U.S. 391, 410 (1976). However, where "[t]he existence and location of the papers are a foregone conclusion and the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers[,] . . . enforcement of the summons" does not touch upon constitutional rights. *Id.* at 411 (citing *In re Harris*, 221 U.S. 274, 279 (1911)). For this foregone conclusion exception to apply, the government must establish its independent knowledge of three elements: the documents' existence, the documents' authenticity and respondent's possession or control of the documents. *See United States v. Hubble*, 530 U.S. 27, 40-41 (2000). The government bears the burden of proof and must have had the requisite knowledge before issuing the summons or subpoena. *See In re Grand Jury Subpoena*, 383 F.3d at 910.

The Brights argue that the district court clearly erred in finding that the act of producing records concerning offshore

bank accounts had no testimonial significance, foreclosing a claim of privilege under the Fifth Amendment. We conclude that the foregone conclusion exception does apply to documents related to the two credit cards expressly named in the summonses. The exception, however, does not apply to documents concerning the two additional credit cards named during contempt proceedings, and the production of those documents is therefore privileged under the Fifth Amendment.

The IRS independently knew about the existence of documents related to the first two credit cards before it issued the summonses. In the initial enforcement proceeding, an IRS agent declared under oath that the IRS Offshore Credit Card Project had gathered information showing that the Brights maintained accounts at both Hallmark Trust and Butterfield Bank and provided the Brights' account numbers to the court.[3] The government also showed that Hallmark Trust and Butterfield Bank provided their account holders with specific account documents, demonstrating the existence of particular documents responsive to the summonses. *See Norwood*, 420 F.3d at 895-96 (applying foregone conclusion exception when the government could demonstrate the existence of accounts and account documents even though it did not enumerate specific responsive documents); *cf. Hubbell*, 530 U.S. at 44-45 (holding foregone conclusion exception did not apply to request for broad categories such as "tax records" when the government made no showing "that it had any prior knowledge of either the existence or the whereabouts of the 13,120 pages of documents ultimately produced" under an immunity agreement); *Doe*, 465 U.S. at 607 n.1, 612-14 & n.13 (holding foregone conclusion exception did not apply to subpoena

---

[3]Although the government did not need to produce documentation of transactions carried out using the cards in order to carry its burden, when the Brights attempted to relitigate the privilege during contempt proceedings, the government produced its documentation, which predated the summonses.

naming 28 broad categories of documents such as "financial statements" and "workpapers").

[6] The government did not need the Brights to authenticate such documents, because the records could be independently authenticated by banking officials. *See, e.g.*, *United States v. Sand*, 541 F.2d 1370, 1376-77 (9th Cir. 1976). Nor did the government need to prove that it had previously authenticated the same documents or that it had used these same bank officials in the past; it needed to show only that it could do so without the taxpayer's assistance, including without information gleaned from the documents. *See In re Grand Jury Subpoena*, 383 F.3d at 912.[4]

[7] Finally, the government showed that account-holders at both banks have access to basic account records through the internet, thus demonstrating that the records were in the Brights' custody and control. In sum, the district court correctly found that the existence of offshore account records was a foregone conclusion.

[8] On the other hand, application of the foregone conclusion exception to records of the two additional credit cards not named during the enforcement proceeding was clear error. The government asserts that at the time the IRS issued the summonses, it knew of the cards' existence and of their use by Cherie's business partner. However, the government made no showing that it knew that the Brights maintained possession or control of the accounts and thus of the account documents. The government may not issue a summons for "other"

---

[4]At oral argument, the Brights suggested for the first time that when the IRS issued the summonses, the government believed that it could not authenticate the documents through bank officials because there were no tax treaties between the United States and the jurisdictions in which the banks were located. However, the Brights conceded that the government can authenticate relevant documents through the American card servicing company. Moreover, this argument was not raised in the district court or preserved in the Brights' briefs and is now waived.

documents and then apply the foregone conclusion exception when it becomes aware of documents through an ongoing investigation. *See In re Grand Jury Subpoena*, 383 F.3d at 911. Therefore, the act of producing these documents is protected by the Fifth Amendment. The enforcement order is narrowed accordingly to exclude documents related to these two credit cards.

## II. Contempt Order

Cherie and Benjamin Bright separately appeal the district court's contempt order. Each argues that neither of them was in contempt of the enforcement order, and they collectively argue that the district court's order was deficient because it was improperly punitive and did not specify purgation conditions.

"We review the district court's entry of sanctions for abuse of discretion." *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1130 (9th Cir. 2008). We review for clear error factual findings underlying contempt, including present inability to comply. *Irwin v. Mascott*, 370 F.3d 924, 931 (9th Cir. 2004); *see also Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 781 (9th Cir. 1983) (noting that present inability to comply is a factual inquiry). For the reasons that follow, we affirm, but we modify the purgation conditions to reflect our narrowing of the enforcement order as discussed above.

### A. Cherie Bright

**[9]** Cherie Bright was in contempt of the enforcement order, on numerous grounds. The government bore the burden to show " '(1) that [Cherie] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence.' " *Labor/Cmty. Strategy Ctr. v. L.A. County Metro. Trans. Auth.*, 564 F.3d 1115, 1123 (9th Cir. 2009) (quoting *In re Dual-Deck Video Cassette Recorder*

*Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)). When defending against a finding of contempt after an adversary enforcement proceeding, a taxpayer cannot relitigate the Fifth Amendment privilege or lack of custody or control. *See United States v. Rylander*, 460 U.S. 752, 757 (1983) (custody or control); *Brown*, 918 F.2d at 83 (constitutional claims).

[10] The district court properly found that the government had shown Cherie to be in violation of the enforcement order. This finding is justifiable based solely on her failure to produce documents related to the two previously identified offshore accounts named in the summons. Crucially, the district court explained "that even if it were . . . to exclude the additional offshore credit card documents as a basis for finding contempt, the ultimate finding of contempt would remain undisturbed." Although we have held that the foregone conclusion exception does not apply to the two additional offshore credit cards, we agree that Cherie's noncompliance as to the two previously identified accounts justified the district court's finding of contempt. Moreover, her failure to produce other documents named in the summonses concerning loans, insurance claims and scholarships provided additional support for the court's finding.[5]

[11] Once the government has established a prima facie case of contempt, a taxpayer may avoid sanctions by demonstrating a present inability to comply with the enforcement order. *See Drollinger*, 80 F.3d at 393. When a party has taken preemptive steps to make compliance more difficult, the burden to prove inability to comply is particularly high. *See FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1241 (9th Cir.

[5]Although we expressed concerns at oral argument concerning whether the district court had considered Cherie's final, detailed declaration, the Brights conceded that the district court had reviewed all materials de novo prior to finding Cherie and Benjamin in contempt. They take issue only with the court's finding that they were not in full compliance. This finding was not clearly erroneous.

1999). Cherie failed to show that she could not produce off-shore credit card documents. Nor was the district court required, in the absence of corroborating evidence, to credit Cherie's declaration that other documents named in the summonses did not exist. *See Maggio v. Zeitz*, 333 U.S. 56, 75-76 (1948). Finally, although Cherie's former business partner did not produce some documents upon her request, the district court properly found that Cherie's late, perfunctory effort to obtain documents did not satisfy her burden. *Cf. United States v. Hayes*, 722 F.2d 723, 725-26 (11th Cir. 1984) (per curiam) (holding that a request for documents is insufficient to establish present inability to comply without proof of pursuit of legal avenues to compel production).

## B.  Benjamin Bright

Benjamin Bright separately argues that he was not in contempt of the enforcement order, contending that he had produced all responsive documents in his custody or control. However, Benjamin waited until six months after entry of the enforcement order to assert that only Cherie had custody or control of the documents. Lack of custody or control is a defense to enforcement and "may not be raised for the first time in a contempt proceeding." *Rylander*, 460 U.S. at 757.

**[12]** Even if we construe Benjamin's argument as a claim of present inability to comply, however, he remained in contempt. The Brights defended this action jointly until a change in strategy during contempt proceedings (and even now have filed joint briefs on appeal). Their joint defense provided a substantial basis for the finding that Benjamin could comply with the enforcement order, even if Cherie maintained primary possession of the documents. Moreover, Cherie's declaration that she is "solely responsible for compliance, or lack thereof with the summons in this case" does not absolve Benjamin of his responsibility to comply with his separate summons. Nor does her declaration that Benjamin was not involved in the activities that generated the requested docu-

ments demonstrate a present inability to produce those documents. Finally, the district court had the discretion to discredit Cherie's self-serving affidavit in light of the history of joint litigation. *Cf. FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

## C.  Purgation Conditions

**[13]**  "Civil contempt is characterized by the court's desire to compel obedience to a court order or to compensate the contemnor's adversary for the injuries which result from the noncompliance." *Falstaff Brewing Corp.*, 702 F.2d at 778 (internal citations omitted). Given the remedial purpose of the sanction, a finding of contempt must be accompanied by conditions by which contempt may be purged, spelled out in either the original order or the contempt order. Moreover, although the district court generally must impose the minimum sanction necessary to secure compliance, *see Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992), the district court retains discretion to establish appropriate sanctions, *see Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992).

**[14]**  Here the district court expressly stated that the Brights would no longer be in contempt if they fully comply with the summonses, provide a definitive declaration that documents do not exist or furnish documentation corroborating their present inability to comply with the summonses. Because we have narrowed the scope of the enforcement order to exclude documents related to the two offshore credit card accounts not expressly named in the summonses — because they are not subject to the foregone conclusion exception — the Brights need not produce documents concerning those accounts in order to purge their contempt. The district court's imposition of a $500 daily fine and payment of the government's costs

was well within the range of appropriate sanctions to secure compliance with a tax summons.

## CONCLUSION

The district court's September 11, 2007 order enforcing the IRS summonses is affirmed, as modified. The district court's August 20, 2008 order finding both Cherie and Benjamin Bright in contempt and imposing sanctions is affirmed, with modified purgation conditions.

**AFFIRMED.**